# UNITED STATES *v.* SCOTT

No. 76–1382.   Argued February 21, 1978—Decided June 14, 1978

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, BLACKMUN, and POWELL, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which WHITE, MARSHALL, and STEVENS, JJ., joined, *post*, p. 101.

*Deputy Solicitor General Frey* argued the cause for the United States. With him on the brief were *Acting Solicitor General Friedman, Assistant Attorney General Civiletti, Frank H. Easterbrook,* and *Sidney M. Glazer.*

*William C. Marietti* argued the cause for respondent. With him on the brief was *Alexis J. Rogoski.*

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

On March 5, 1975, respondent, a member of the police force in Muskegon, Mich., was charged in a three-count indictment with distribution of various narcotics. Both before his trial in the United States District Court for the Western District of Michigan, and twice during the trial, respondent moved to dismiss the two counts of the indictment which concerned transactions that took place during the preceding September, on the ground that his defense had been prejudiced by preindictment delay. At the close of all the evidence, the court granted respondent's motion. Although the court did not explain its reasons for dismissing the second count, it explicitly concluded that respondent had "presented sufficient proof of prejudice with respect to Count I." App. to Pet. for Cert. 8a. The court submitted the third count to the jury, which returned a verdict of not guilty.

The Government sought to appeal the dismissals of the first two counts to the United States Court of Appeals for the Sixth Circuit. That court, relying on our opinion in *United States v. Jenkins,* 420 U. S. 358 (1975), concluded that any further prosecution of respondent was barred by the Double Jeopardy Clause of the Fifth Amendment, and therefore dismissed the appeal. 544 F. 2d 903 (1976). The Government has sought review in this Court only with regard to the dismissal of the first count. We granted certiorari to give further consideration to the applicability of the Double Jeopardy Clause to Government appeals from orders granting defense motions to terminate a trial before verdict. We now reverse.

I

The problem presented by this case could not have arisen during the first century of this Court's existence. The Court has long taken the view that the United States has no right of

appeal in a criminal case, absent explicit statutory authority. *United States* v. *Sanges,* 144 U. S. 310 (1892). Such authority was not provided until the enactment of the Criminal Appeals Act, Act of Mar. 2, 1907, ch. 2564, 34 Stat. 1246, which permitted the United States to seek a writ of error in this Court from any decision dismissing an indictment on the basis of "the invalidity, or construction of the statute upon which the indictment is founded." Our consideration of Government appeals over the ensuing years ordinarily focused upon the intricacies of the Act and its amendments.[1] In 1971, however, Congress adopted the current language of the Act, permitting Government appeals from any decision dismissing an indictment, "except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." 18 U. S. C. § 3731 (1976 ed.). Soon thereafter, this Court remarked in a footnote with more optimism than prescience that "[t]he end of our problems with this Act is finally in sight." *United States* v. *Weller,* 401 U. S. 254, 255 n. 1 (1971). For in fact the 1971 amendment did not end the debate over appeals by the Government in criminal cases; it simply shifted the focus of the debate from issues of statutory construction to issues as to the scope and meaning of the Double Jeopardy Clause.

In our first encounter with the new statute, we concluded that "Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *United States* v. *Wilson,* 420 U. S. 332, 337 (1975). Since up to that point Government appeals had been subject to statutory restrictions independent of the Double Jeopardy Clause, our previous cases construing the statute proved to be of little assistance in determining when the Double Jeopardy Clause of the Fifth Amendment would

---

[1] A thorough account of the enactment and development of the Act is set out in Mr. Justice Harlan's opinion for the Court in *United States* v. *Sisson,* 399 U. S. 267, 291–296 (1970).

prohibit further prosecution. A detailed canvass of the history of the double jeopardy principles in English and American law led us to conclude that the Double Jeopardy Clause was primarily "directed at the threat of multiple prosecutions," and posed no bar to Government appeals "where those appeals would not require a new trial." *Id.,* at 342. We accordingly held in *Jenkins, supra,* at 370, that, whether or not a dismissal of an indictment after jeopardy had attached amounted to an acquittal on the merits, the Government had no right to appeal, because "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand." [2]

If *Jenkins* is a correct statement of the law, the judgment of the Court of Appeals relying on that decision, as it was bound to do, would in all likelihood have to be affirmed.[3] Yet, though our assessment of the history and meaning of the Double Jeopardy Clause in *Wilson, Jenkins,* and *Serfass* v. *United States,* 420 U. S. 377 (1975), occurred only three Terms ago, our vastly increased exposure to the various facets of the Double Jeopardy Clause has now convinced us that *Jenkins*

[2] The rule established in *Wilson* and *Jenkins* was later described in the following terms:

"[D]ismissals (as opposed to mistrials) if they occurred at a stage of the proceeding after which jeopardy had attached, but prior to the factfinder's conclusion as to guilt or innocence, were final so far as the accused defendant was concerned and could not be appealed by the Government because retrial was barred by double jeopardy. This made the issue of double jeopardy turn very largely on temporal considerations—if the Court granted an order of dismissal during the factfinding stage of the proceedings, the defendant could not be reprosecuted, but if the dismissal came later, he could." *Lee* v. *United States,* 432 U. S. 23, 36 (1977) (REHNQUIST, J., concurring).

[3] The Government contends here that the District Court in *Jenkins* entered a judgment of acquittal in favor of Jenkins, but our opinion in that case recognized that it could not be said with certainty whether this was the case. See *Jenkins,* 420 U. S., at 367.

was wrongly decided. It placed an unwarrantedly great emphasis on the defendant's right to have his guilt decided by the first jury empaneled to try him so as to include those cases where the defendant himself seeks to terminate the trial before verdict on grounds unrelated to factual guilt or innocence. We have therefore decided to overrule *Jenkins,* and thus to reverse the judgment of the Court of Appeals in this case.

## II

The origin and history of the Double Jeopardy Clause are hardly a matter of dispute. See generally *Wilson; supra,* at 339–340; *Green* v. *United States,* 355 U. S. 184, 187–188 (1957); *id.,* at 200 (Frankfurter, J., dissenting). The constitutional provision had its origin in the three common-law pleas of *autrefois acquit, autrefois convict,* and pardon. These three pleas prevented the retrial of a person who had previously been acquitted, convicted, or pardoned for the same offense. As this Court has described the purpose underlying the prohibition against double jeopardy:

> "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green, supra,* at 187–188.

These historical purposes are necessarily general in nature, and their application has come to abound in often subtle distinctions which cannot by any means all be traced to the original three common-law pleas referred to above.

Part of the difficulty arises from the development of other protections for criminal defendants in the years since the

adoption of the Bill of Rights. At the time the Fifth Amendment was adopted, its principles were easily applied, since most criminal prosecutions proceeded to final judgment, and neither the United States nor the defendant had any right to appeal an adverse verdict. See Act of Sept. 24, 1789, ch. 20, § 22, 1 Stat. 84. The verdict in such a case was unquestionably final, and could be raised in bar against any further prosecution for the same offense.

Soon thereafter, Congress made provision for review of certain criminal cases by this Court, but only upon a certificate of division from the circuit court, and not at the instigation of the defendant. Act of Apr. 29, 1802, ch. 31, § 6, 2 Stat. 159. It was not until 1889 that Congress permitted criminal defendants to seek a writ of error in this Court, and then only in capital cases. Act of Feb. 6, 1889, ch. 113, § 6, 25 Stat. 656.[4] Only then did it become necessary for this Court to deal with the issues presented by the challenge of verdicts on appeal.

And, in the very first case presenting the issues, *United States* v. *Ball*, 163 U. S. 662 (1896), the Court established principles that have been adhered to ever since. Three persons had been tried together for murder; two were convicted, the other acquitted. This Court reversed the convictions, finding the indictment fatally defective, *Ball* v. *United States*, 140 U. S. 118 (1891), whereupon all three defendants were tried again. This time all three were convicted and they again sought review here. This Court held that the Double Jeopardy Clause precluded further prosecution of the defendant who had been *acquitted* at the original trial [5] but that it posed no such

---

[4] Two years later, review was provided for all "infamous" crimes. Act of Mar. 3, 1891, ch. 517, § 5, 26 Stat. 827.

[5] The Court thereby rejected the English rule set out in *Vaux's Case*, 4 Co. Rep. 44a, 76 Eng. Rep. 992 (K. B. 1590), which refused to recognize a plea of *autrefois acquit* where the initial indictment had been insufficient to support a conviction. Again, this ruling provided a greater measure of protection for criminal defendants than had been known at the time of the

bar to the prosecution of those defendants who had been *convicted* in the earlier proceeding. The Court disposed of their objection almost peremptorily:

> "Their plea of former conviction cannot be sustained, because upon a writ of error sued out by themselves the judgment and sentence against them were reversed, and the indictment ordered to be dismissed. . . . [I]t is quite clear that a defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offence of which he had been convicted." 163 U. S., at 671–672.

Although *Ball* firmly established that a successful appeal of a conviction precludes a subsequent plea of double jeopardy, the opinion shed no light on whether a judgment of acquittal could be reversed on appeal consistently with the Double Jeopardy Clause. Because of the statutory restrictions upon Government appeals in criminal cases, this Court in the years after *Ball* was faced with that question only in unusual circumstances, such as were present in *Kepner* v. *United States,* 195 U. S. 100 (1904). That case arose out of a criminal prosecution in the Philippine Islands, to which the principles of the Double Jeopardy Clause had been expressly made applicable by Act of Congress. Although the defendant had been acquitted in his original trial, traditional Philippine procedure provided for a trial *de novo* upon appeal. This Court, in reversing the resulting conviction, remarked:

> "The court of first instance, having jurisdiction to try the question of the guilt or innocence of the accused, found Kepner not guilty; to try him again upon the merits, even

---

adoption of the Constitution. A contrary ruling would have altered this Court's task in such cases as *Lee* v. *United States,* 432 U. S. 23 (1977), and *Illinois* v. *Somerville,* 410 U. S. 458 (1973).

in an appellate court, is to put him a second time in jeopardy for the same offense . . . ." *Id.,* at 133.[6]

More than 50 years later, in *Fong Foo* v. *United States,* 369 U. S. 141 (1962), this Court reviewed the issuance of a writ of mandamus by the Court of Appeals for the First Circuit instructing a District Court to vacate certain judgments of acquittal. Although indicating its agreement with the Court of Appeals that the judgments had been entered erroneously, this Court nonetheless held that a second trial was barred by the Double Jeopardy Clause. *Id.,* at 143. Only last Term, this Court relied upon these precedents in *United States* v. *Martin Linen Supply Co.,* 430 U. S. 564 (1977), and held that the Government could not appeal the granting of a motion to acquit pursuant to Fed. Rule Crim. Proc. 29 where a second trial would be required upon remand. The Court, quoting language in *Ball, supra,* at 671, stated: "Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.' " 430 U. S., at 571.

These, then, at least, are two venerable principles of double jeopardy jurisprudence. The successful appeal of a judgment of conviction, on any ground other than the insufficiency of

---

[6] In so doing, the Court rejected the contention of Mr. Justice Holmes in dissent that "there is no rule that a man may not be tried twice in the same case." 195 U. S., at 134. He went on to say:

"If a statute should give the right to take exceptions to the Government, I believe it would be impossible to maintain that the prisoner would be protected by the Constitution from being tried again. He no more would be put in jeopardy a second time when retried because of a mistake of law in his favor, than he would be when retried for a mistake that did him harm." *Id.,* at 135.

Mr. Justice Holmes' concept of continuing jeopardy would have greatly simplified the matter of Government appeals, but it has never been accepted by a majority of this Court. See *Jenkins,* 420 U. S., at 358.

the evidence to support the verdict, *Burks* v. *United States, ante,* p. 1, poses no bar to further prosecution on the same charge. A judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal.[7] What may seem superficially to be a disparity in the rules governing a defendant's liability to be tried again is explainable by reference to the underlying purposes of the Double Jeopardy Clause. As *Kepner* and *Fong Foo* illustrate, the law attaches particular significance to an acquittal. To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that "even though innocent he may be found guilty." *Green,* 355 U. S., at 188. On the other hand, to require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect. The common sense of the matter is most pithily, if not most elegantly, expressed in the words of Mr. Justice McLean on circuit in *United States* v. *Keen,* 26 F. Cas. 686 (No. 15,510)

---

[7] In *Jenkins* we had assumed that a judgment of acquittal could be appealed where no retrial would be needed on remand:

"When this principle is applied to the situation where the jury returns a verdict of guilt but the trial court thereafter enters a judgment of acquittal, an appeal is permitted. In that situation a conclusion by an appellate court that the judgment of acquittal was improper does not require a criminal defendant to submit to a second trial; the error can be corrected on remand by the entry of a judgment on the verdict." *Id.,* at 365. Despite the Court's heavy emphasis on the finality of an acquittal in *Martin Linen* and *Sanabria* v. *United States, ante,* p. 54, neither decision explicitly repudiates this assumption. *Sanabria, ante,* at 75; *Martin Linen,* 430 U. S., at 569–570.

(CC Ind. 1839). He vigorously rejected the view that the Double Jeopardy Clause prohibited any new trial after the setting aside of a judgment of conviction against the defendant or that it "guarantees to him the right of being hung, to protect him from the danger of a second trial." *Id.,* at 690.

## III

Although the primary purpose of the Double Jeopardy Clause was to protect the integrity of a final judgment, see *Crist* v. *Bretz, ante,* at 33, this Court has also developed a body of law guarding the separate but related interest of a defendant in avoiding multiple prosecutions even where no final determination of guilt or innocence has been made. Such interests may be involved in two different situations: the first, in which the trial judge declares a mistrial; the second, in which the trial judge terminates the proceedings favorably to the defendant on a basis not related to factual guilt or innocence.

## A

When a trial court declares a mistrial, it all but invariably contemplates that the prosecutor will be permitted to proceed anew notwithstanding the defendant's plea of double jeopardy. See *Lee* v. *United States,* 432 U. S. 23, 30 (1977). Such a motion may be granted upon the initiative of either party or upon the court's own initiative. The fact that the trial judge contemplates that there will be a new trial is not conclusive on the issue of double jeopardy; in passing on the propriety of a declaration of mistrial granted at the behest of the prosecutor or on the court's own motion, this Court has balanced "the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him," *Downum* v. *United States,* 372 U. S. 734, 736 (1963), against the public interest in insuring that justice is meted out to offenders.

Our very first encounter with this situation came in *United*

*States* v. *Perez,* 9 Wheat. 579 (1824), in which the trial judge had on his own motion declared a mistrial because of the jury's inability to reach a verdict. The Court said that trial judges might declare mistrials "whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Id.,* at 580. In our recent decision in *Arizona* v. *Washington,* 434 U. S. 497 (1978), we reviewed this Court's attempts to give content to the term "manifest necessity." That case, like *Downum, supra,*[8] arose from a motion of the prosecution for a mistrial, and we noted that the trial court's discretion must be exercised with a careful regard for the interests first described in *United States* v. *Perez. Arizona* v. *Washington, supra,* at 514–516.

Where, on the other hand, a *defendant* successfully seeks to avoid his trial prior to its conclusion by a motion for mistrial, the Double Jeopardy Clause is not offended by a second prosecution. "[A] motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by a prosecutorial or judicial error." *United States* v. *Jorn,* 400 U. S. 470, 485 (1971) (opinion of Harlan, J.). Such a motion by the defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact. "The important considera-

---

[8] *Downum,* in 1963, was the first case in which this Court actually reversed a subsequent conviction because of an improper declaration of a mistrial. This, too, provided greater protection for a defendant than was available at the common law. Although English precedents clearly disapproved of unnecessary mistrials, see generally *Arizona* v. *Washington,* 434 U. S., at 506–508, and nn. 21–23, the English rule at the time of the adoption of the Constitution was, as it remains today, that nothing short of a final judgment would bar further prosecution. "The fact that the jury was discharged without giving a verdict cannot be a bar to a subsequent indictment." 11 Halsbury's Laws of England, Criminal Law, Evidence, and Procedure ¶ 242 (4th ed. 1976).

tion, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *United States* v. *Dinitz,* 424 U. S. 600, 609 (1976). But "[t]he Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." *Id.,* at 611.

## B

We turn now to the relationship between the Double Jeopardy Clause and reprosecution of a defendant who has successfully obtained not a mistrial but a termination of the trial in his favor before any determination of factual guilt or innocence. Unlike the typical mistrial, the granting of a motion such as this obviously contemplates that the proceedings will terminate then and there in favor of the defendant. The prosecution, if it wishes to reinstate the proceedings in the face of such a ruling, ordinarily must seek reversal of the decision of the trial court.

The Criminal Appeals Act, 18 U. S. C. § 3731 (1976 ed.), as previously noted, makes appealability of a ruling favorable to the defendant depend upon whether further proceedings upon reversal would be barred by the Double Jeopardy Clause. *Jenkins,* 420 U. S., at 370, held that, regardless of the character of the midtrial termination, appeal was barred if "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand." However, only last Term, in *Lee, supra,* the Government was permitted to institute a second prosecution after a midtrial dismissal of an indictment. The Court found the circumstances presented by that case "functionally indistinguishable from a declaration of mistrial." 432 U. S., at 31. Thus, *Lee* demonstrated that, at least in some cases, the dismissal of an indictment may be treated on the same basis as the declaration of a mistrial.

In the present case, the District Court's dismissal of the first count of the indictment was based upon a claim of preindictment delay and not on the court's conclusion that the Government had not produced sufficient evidence to establish the guilt of the defendant. Respondent Scott points out quite correctly that he had moved to dismiss the indictment on this ground prior to trial, and that had the District Court chosen to grant it at that time the Government could have appealed the ruling under our holding in *Serfass* v. *United States,* 420 U. S. 377 (1975). He also quite correctly points out that jeopardy had undeniably "attached" at the time the District Court terminated the trial in his favor; since a successful Government appeal would require further proceedings in the District Court leading to a factual resolution of the issue of guilt or innocence, *Jenkins* bars the Government's appeal. However, our growing experience with Government appeals convinces us that we must re-examine the rationale of *Jenkins* in light of *Lee, Martin Linen,* and other recent expositions of the Double Jeopardy Clause.

## IV

Our decision in *Jenkins* was based upon our perceptions of the underlying purposes of the Double Jeopardy Clause, see *supra,* at 87:

> " 'The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity . . . .' "
> *Jenkins, supra,* at 370, quoting *Green,* 355 U. S., at 187.

Upon fuller consideration, we are now of the view that this language from *Green,* while entirely appropriate in the circumstances of that opinion, is not a principle which can be

expanded to include situations in which the defendant is responsible for the second prosecution. It is quite true that the Government with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense. This truth is expressed in the three common-law pleas of *autrefois acquit, autrefois convict,* and pardon, which lie at the core of the area protected by the Double Jeopardy Clause. As we have recognized in cases from *United States* v. *Ball,* 163 U. S. 662 (1896), to *Sanabria* v. *United States, ante,* p. 54, a defendant once acquitted may not be again subjected to trial without violating the Double Jeopardy Clause.

But that situation is obviously a far cry from the present case, where the Government was quite willing to continue with its production of evidence to show the defendant guilty before the jury first empaneled to try him, but the defendant elected to seek termination of the trial on grounds unrelated to guilt or innocence. This is scarcely a picture of an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact. It is instead a picture of a defendant who chooses to avoid conviction and imprisonment, not because of his assertion that the Government has failed to make out a case against him, but because of a legal claim that the Government's case against him must fail even though it might satisfy the trier of fact that he was guilty beyond a reasonable doubt.

We have previously noted that "the trial judge's characterization of his own action cannot control the classification of the action." *Jorn,* 400 U. S., at 478 n. 7 (opinion of Harlan, J.), citing *United States* v. *Sisson,* 399 U. S. 267, 290 (1970). See also *Martin Linen,* 430 U. S., at 571; *Wilson,* 420 U. S., at 336. Despite respondent's contentions, an appeal is not barred simply because a ruling in favor of a defendant "is based upon facts outside the face of the indictment," *id.,* at 348, or be-

cause it "is granted on the ground . . . that the defendant simply cannot be convicted of the offense charged," *Lee*, 432 U. S., at 30. Rather, a defendant is acquitted only when "the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged." *Martin Linen, supra*, at 571. Where the court, before the jury returns a verdict, enters a judgment of acquittal pursuant to Fed. Rule Crim. Proc. 29, appeal will be barred only when "it is plain that the District Court . . . evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction." 430 U. S., at 572.[9]

Our opinion in *Burks* necessarily holds that there has been a "failure of proof," *ante*, at 16, requiring an acquittal when the Government does not submit sufficient evidence to rebut a defendant's essentially factual defense of insanity, though it may otherwise be entitled to have its case submitted to the jury. The defense of insanity, like the defense of entrapment, arises from "the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense," *United States v. Russell*, 411 U. S. 423, 435 (1973), where other facts established to the satisfaction of the trier of fact provide a legally

---

[9] In *Jenkins*, which was a bench trial, we had difficulty, as did the Court of Appeals in that case, in characterizing the precise import of the District Court's order dismissing the indictment. The analysis that governed our disposition turned not on whether the defendant had been acquitted but on whether the proceeding had terminated "in the defendant's favor," 420 U. S., at 365 n. 7, and whether "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand," *id.*, at 370. We thus had no occasion to determine whether the District Court simply had made "an erroneous interpretation of the controlling law," *id.*, at 365 n. 7, or whether it had "resolved [controlling] issues of fact in favor of the respondent," *id.*, at 367; see *id.*, at 362 n. 3.

adequate justification for otherwise criminal acts.[10] Such a factual finding *does* "necessarily establish the criminal defendant's lack of criminal culpability," *post,* at 106 (BRENNAN, J., dissenting), under the existing law; the fact that "the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles," *ibid.,* affects the accuracy of that determination, but it does not alter its essential character. By contrast, the dismissal of an indictment for preindictment delay represents a legal judgment that a defendant, although criminally culpable, may not be punished because of a supposed constitutional violation.[11]

We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings

---

[10] The defense of insanity in a federal criminal prosecution was first recognized by this Court in *Davis* v. *United States,* 160 U. S. 469 (1895). Mr. Justice Harlan's opinion for the Court construed federal law in light of the larger body of common law in other jurisdictions, and concluded:

"One who takes human life cannot be said to be actuated by malice aforethought, or to have deliberately intended to take life, or to have 'a wicked, depraved, and malignant heart,' or a heart 'regardless of society duty and fatally bent on mischief' unless at the time he had sufficient mind to comprehend the criminality or the right and wrong of such an act." *Id.,* at 485.

While Congress has never made explicit statutory provision for this affirmative defense or any other, it has recognized the validity of the defense by regulating its use in federal prosecutions. Fed. Rule Crim. Proc. 12.2 (a).

[11] While an acquittal on the merits by the trier of fact "can never represent a determination that the criminal defendant is innocent in any absolute sense," *post,* at 107 (BRENNAN, J., dissenting), a defendant who has been released by a court for reasons required by the Constitution or laws, but which are unrelated to factual guilt or innocence, has not been determined to be innocent in any sense of that word, absolute or otherwise. In other circumstances, this Court has had no difficulty in distinguishing between those rulings which relate to "the ultimate question of guilt or innocence" and those which serve other purposes. *Stone* v. *Powell,* 428 U. S. 465, 490 (1976). We reject the contrary implication of the dissent that this Court or other courts are incapable of distinguishing between the latter and the former.

against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant. We do not thereby adopt the doctrine of "waiver" of double jeopardy rejected in *Green*.[12] Rather, we conclude that the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice. In *Green* the question of the defendant's factual guilt or innocence of murder in the first degree was actually submitted to the jury as a trier of fact; in the present case, respondent successfully avoided such a submission of the first count of the indictment by persuading the trial court to dismiss it on a basis which did not depend on guilt or innocence. He was thus neither acquitted nor convicted, because he himself successfully undertook to persuade the trial court not to submit the issue of guilt or innocence to the jury which had been empaneled to try him.

The reason for treating a trial aborted on the initiative of the trial judge differently from a trial verdict reversed on appeal, for purposes of double jeopardy, is thus described in *Jorn,* 400 U. S., at 484 (opinion of Harlan, J.):

"[I]n the [second] situation the defendant has not been deprived of his option to go to the first jury, and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has

---

[12] The original jury in that case had found the defendant guilty of second-degree murder, but did not find him guilty of first-degree murder. The Court held that his appeal did not waive his objection to a second prosecution for first-degree murder, but it was careful to reaffirm the holding of *United States* v. *Ball,* 163 U. S. 662 (1896), that "a defendant can be tried a second time for an offense when his prior conviction for that same offense [has] been set aside on appeal." 355 U. S., at 189.

been deprived of his 'valued right to have his trial completed by a particular tribunal.' "

We think the same reasoning applies *in pari passu* where the defendant, instead of obtaining a reversal of his conviction on appeal, obtains the termination of the proceedings against him in the trial court without any finding by a court or jury as to his guilt or innocence. He has not been "deprived" of his valued right to go to the first jury; only the public has been deprived of its valued right to "one complete opportunity to convict those who have violated its laws." *Arizona* v. *Washington,* 434 U. S., at 509. No interest protected by the Double Jeopardy Clause is invaded when the Government is allowed to appeal and seek reversal of such a midtrial termination of the proceedings in a manner favorable to the defendant.[13]

It is obvious from what we have said that we believe we pressed too far in *Jenkins* the concept of the "defendant's valued right to have his trial completed by a particular tri-

---

[13] We should point out that it is entirely possible for a trial court to reconcile the public interest in the Government's right to appeal from an erroneous conclusion of law with the defendant's interest in avoiding a second prosecution. In *United States* v. *Wilson,* 420 U. S. 332 (1975), the court permitted the case to go to the jury, which returned a verdict of guilty, but it subsequently dismissed the indictment for preindictment delay on the basis of evidence adduced at trial. Most recently in *United States* v. *Ceccolini,* 435 U. S. 268 (1978), we described similar action with approval: "The District Court had sensibly first made its finding on the factual question of guilt or innocence, and then ruled on the motion to suppress; a reversal of these rulings would require no further proceedings in the District Court, but merely a reinstatement of the finding of guilt." *Id.,* at 271. Accord, *United States* v. *Kopp,* 429 U. S. 121 (1976); *United States* v. *Rose,* 429 U. S. 5 (1976); *United States* v. *Morrison,* 429 U. S. 1 (1976).

We, of course, do not suggest that a midtrial dismissal of a prosecution, in response to a defense motion on grounds unrelated to guilt or innocence, is necessarily improper. Such rulings may be necessary to terminate proceedings marred by fundamental error. But where a defendant prevails on such a motion, he takes the risk that an appellate court will reverse the trial court.

bunal." *Wade* v. *Hunter*, 336 U. S. 684, 689 (1949). We now conclude that where the defendant himself seeks to have the trial terminated without any submission to either judge or jury as to his guilt or innocence, an appeal by the Government from his successful effort to do so is not barred by 18 U. S. C. § 3731 (1976 ed.).

We recognize the force of the doctrine of *stare decisis,* but we are conscious as well of the admonition of Mr. Justice Brandeis:

> "[I]n cases involving the Federal Constitution, where correction through legislative action is practically impossible, this Court has often overruled its earlier decisions. The Court bows to the lessons of experience and the force of better reasoning, recognizing that the process of trial and error, so fruitful in the physical sciences, is appropriate also in the judicial function." *Burnet* v. *Coronado Oil & Gas Co.,* 285 U. S. 393, 406–408 (1932) (dissenting opinion).

Here, "the lessons of experience" indicate that Government appeals from midtrial dismissals requested by the defendant would significantly advance the public interest in assuring that each defendant shall be subject to a just judgment on the merits of his case, without "enhancing the possibility that even though innocent he may be found guilty." *Green,* 355 U. S., at 188. Accordingly, the contrary holding of *United States* v. *Jenkins* is overruled.

The judgment of the Court of Appeals is therefore reversed, and the cause is remanded for further proceedings.

*It is so ordered.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE WHITE, MR. JUSTICE MARSHALL, and MR. JUSTICE STEVENS join, dissenting.

On the basis of his evaluation of the trial evidence, the District Judge concluded that unjustifiable preindictment de-

lay had so prejudiced respondent's defense as to preclude—consistently with the Due Process Clause—his conviction of the offense alleged in count one of the indictment. He therefore dismissed this count with prejudice. Under the principles of double jeopardy law that controlled until today, further prosecution of respondent under count one would unquestionably be prohibited, and appeal by the United States from the judgment of dismissal thus would not lie. See 18 U. S. C. § 3731 (1976 ed.). The dismissal would, under prior law, have been treated as an "acquittal"—*i. e.*, "a legal determination on the basis of facts adduced at the trial relating to the general issue of the case." *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 575 (1977) (citations omitted). Indeed, further proceedings would have been barred even if the dismissal could not have been so characterized. *United States* v. *Jenkins*, 420 U. S. 358 (1975), established that, even if a midtrial termination does not amount to an "acquittal," an appeal by the United States from the dismissal would not lie if a reversal would, as is of course true in the present case, require "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged." *Id.*, at 370. This principle was reaffirmed only last Term in *Lee* v. *United States*, 432 U. S. 23, 30 (1977): "Where a midtrial dismissal is granted on the ground, correct or not, that the defendant simply cannot be convicted of the offense charged, . . . further prosecution is barred by the Double Jeopardy Clause." [1]

But the Court today overrules the principle recognized in *Jenkins* and *Lee*. While reaffirming that the Government may not appeal from judgments of "acquittal" when reversals would require new trials, the Court holds that appeals by the United States will lie from all other final judgments favor-

---

[1] See also *Finch* v. *United States*, 433 U. S. 676 (1977) (applying rule of *Jenkins* to dismissal entered on basis of stipulated facts); *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564 (1977).

able to the accused. The Court implements this new rule by fashioning a more restrictive definition of "acquittal" than heretofore followed—*i. e.*, "a resolution, correct or not, of some or all of the factual elements of the offense"—and holds, without explanation, that, under that restrictive definition, respondent was not "acquitted" when the District Judge concluded that the facts adduced at trial established that unjustifiable and prejudicial preindictment delay gave respondent a complete defense to the charges contained in count one.

I dissent. I would not overrule the rule announced in *Jenkins* and reaffirmed in *Lee*. This principle is vital to the implementation of the values protected by the Double Jeopardy Clause; indeed, it follows necessarily from the very rule the Court today reaffirms. The Court's attempt to draw a distinction between "true acquittals" and other final judgments favorable to the accused, quite simply, is unsupportable in either logic or policy. Equally fundamental, the decision today indefensibly adopts an overly restrictive definition of "acquittal." Its definition, moreover, in sharp contrast to the rule of *Jenkins*, is incapable of principled application. That is vividly evident in the Court's own distinction between a dismissal based on a finding of preaccusation delay violative of due process, and a dismissal based upon evidence adduced at trial in support of a defense of insanity or of entrapment. *Ante,* at 97–98. Why should the dismissal in the latter cases raise a double jeopardy bar, but the dismissal based on preaccusation delay not also raise that bar to a retrial? The Court ventures no persuasive explanation. Because the thousands of state and federal judges who must apply today's decision to similar "affirmative defenses" are left without meaningful guidance, only confusion can result from today's decision.

## I

The Court reaffirms the "most fundamental rule in the history of double jeopardy jurisprudence": that judgments of

acquittal, no matter how erroneous, bar any retrial and thus that, under the proviso in 18 U. S. C. § 3731 (1976 ed.),[2] appeals by the United States will not lie when reversal would require a retrial.[3] The major premise for the Court's conclusion that the Government may appeal from the final judgment entered for respondent is that there is a difference of constitutional magnitude between "acquittals" and midtrial dismissals, entered on motion of the accused, on grounds "unrelated to factual innocence." This premise is fatally flawed. It, quite simply, misconceives the whole basis for the rule that "acquittals" bar retrials. The reason for this rule is not, as the Court suggests, primarily to safeguard determinations of innocence; rather, it is that a retrial following a final judgment for the accused necessarily threatens intolerable interference with the constitutional policy against multiple trials. Moreover, in terms of the practical operation of the adversary process, there is actually no difference between a so-called "true acquittal" and the termination in this case favorably to respondent.

## A

While the Double Jeopardy Clause often has the effect of protecting the accused's interest in the finality of particular favorable determinations, this is not its objective. For the Clause often permits Government appeals from final judgments favorable to the accused. See *United States* v. *Wilson,* 420 U. S. 332 (1975) (whether or not final judgment was an acquittal, Government may appeal if reversal would not ne-

---

[2] Section 3731 provides that the United States may obtain appellate review of a "dismissal" "except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."

[3] The Court cites with approval *Sanabria* v. *United States, ante,* p. 54; *United States* v. *Martin Linen Supply Co., supra; Fong Foo* v. *United States,* 369 U. S. 141 (1962); *Kepner* v. *United States,* 195 U. S. 100 (1904); and *United States* v. *Ball,* 163 U. S. 662 (1896).

cessitate a retrial). The purpose of the Clause, which the Court today fails sufficiently to appreciate, is to protect the accused against the agony and risks attendant upon undergoing more than one criminal trial for any single offense. See *ibid.* A retrial increases the financial and emotional burden that any criminal trial represents for the accused, prolongs the period of the unresolved accusation of wrongdoing, and enhances the risk that an innocent defendant may be convicted.[4] See *Arizona* v. *Washington,* 434 U. S. 497, 503–504 (1978); *Green* v. *United States,* 355 U. S. 184, 187–188 (1957). Society's "willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws" bespeaks society's recognition of the gross unfairness of requiring the accused to undergo the strain and agony of more than one trial for any single offense. *United States* v. *Jorn,* 400 U. S. 470, 479 (1971) (opinion of Harlan, J.). Accordingly, the policies of the Double Jeopardy Clause mandate that the Government be afforded but one complete opportunity to convict an accused and that when the first proceeding terminates in a final judgment favorable to the defendant[5] any retrial be barred. The rule as to acquittals can only be understood as simply an application of this larger principle.

Judgments of acquittal normally result from jury or bench

---

[4] There are a number of reasons a retrial enhances the risk that "even though innocent, [the criminal defendant] may be found guilty." *Green* v. *United States,* 355 U. S. 184, 188 (1957). A retrial affords the Government the opportunity to re-examine the weaknesses of its first presentation in order to strengthen the second. And, as would any litigant, the Government has been known to take advantage of this opportunity. It is not uncommon to find that prosecution witnesses change their testimony, not always subtly, at second trials. See *Arizona* v. *Washington,* 434 U. S. 497, 504 n. 14 (1978), quoting *Carsey* v. *United States,* 129 U. S. App. D. C. 205, 208–209, 392 F. 2d 810, 813–814 (1967).

[5] By "final judgment favorable to the accused," I am, of course, referring to an order terminating all prosecution of the defendant on the ground he "simply cannot be convicted of the offense charged." See *Lee* v. *United States,* 432 U. S. 23, 30 (1977).

verdicts of not guilty. In such cases, the acquittal represents the factfinder's conclusion that, under the controlling legal principles, the evidence does not establish that the defendant can be convicted of the offense charged in the indictment. But the judgment does not necessarily establish the criminal defendant's lack of criminal culpability; the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles induced by the defense. Yet the Double Jeopardy Clause bars a second trial.

In repeatedly holding that the Government may not appeal from an acquittal if a reversal would necessitate a retrial, the Court has, of course, recognized that this rule impairs to some degree the Government's interest in enforcing its criminal laws. Yet, while we have acknowledged that permitting review of acquittals would avoid release of guilty defendants who benefited from "error, irrational behavior, or prejudice on the part of the trial judge," *United States* v. *Martin Linen Supply Co.*, 430 U. S., at 574; see *United States* v. *Wilson, supra*, at 352, we nevertheless have consistently held that the Double Jeopardy Clause bars any appellate review in such circumstances. The reason is not that the first trial established the defendant's factual innocence, but rather that the second trial would present all the untoward consequences the Clause was designed to prevent. The Government would be allowed to seek to persuade a second trier of fact of the defendant's guilt, to strengthen any weaknesses in its first presentation, and to subject the defendant to the expense and anxiety of a second trial. See *ibid.*

This basic principle of double jeopardy law has heretofore applied not only to acquittals based on the verdict of the factfinder, but also to acquittals entered by the trial judge, following the presentation of evidence but before verdict, pursuant to Fed. Rule Crim. Proc. 29. See *Sanabria* v. *United States, ante*, p. 54; *United States* v. *Martin Linen Supply Co.*,

*supra; Fong Foo* v. *United States,* 369 U. S. 141 (1962). For however egregious the error of the acquittal, the termination favorable to the accused has been regarded as no different from a factfinder's acquittal that resulted from errors of the trial judge. See also *Burks* v. *United States, ante,* p. 1. These cases teach that the Government's means of protecting its vital interest in convicting the guilty is its participation as an adversary at the criminal trial where it has every opportunity to dissuade the trial court from committing erroneous rulings favorable to the accused.

*Jenkins* was simply a necessary and logical extension of the rule that an acquittal bars any further trial proceedings. *Jenkins* recognized that an acquittal can never represent a determination that the criminal defendant is innocent in any absolute sense; the bar to a retrial following acquittal does not—and indeed could not—rest on any assumption that the finder of fact has applied the correct legal principles to all the admissible evidence and determined that the defendant was factually innocent of the offense charged. The reason further prosecution is barred following an acquittal, rather, is that the Government has been afforded one complete opportunity to prove a case of the criminal defendant's culpability and, when it has failed for any reason to persuade the court not to enter a final judgment favorable to the accused, the constitutional policies underlying the ban against multiple trials become compelling. Thus, *Jenkins* and *Lee* recognized that it mattered not whether the final judgment constituted a formal "acquittal." What is critical is whether the accused obtained, after jeopardy attached, a favorable termination of the charges against him. If he did, no matter how erroneous the ruling, the policies embodied in the Double Jeopardy Clause require the conclusion that "further proceedings . . . devoted to the resolution of factual issues going to the elements of the offense charged" are barred. *Jenkins,* 420 U. S., at 370; see *Lee,* 432 U. S., at 30.

## B

The whole premise for today's retreat from *Jenkins* and *Lee,* of course, is the Court's new theory that a criminal defendant who seeks to avoid conviction on a "ground unrelated to factual innocence" somehow stands on a different constitutional footing from a defendant whose participation in his criminal trial creates a situation in which a judgment of acquittal has to be entered. This premise is simply untenable. The rule prohibiting retrials following acquittals does not and could not rest on a conclusion that the accused was factually innocent in any meaningful sense. If that were the basis for the rule, the decisions that have held that even egregiously erroneous acquittals preclude retrials, see, *e. g., Fong Foo* v. *United States, supra* (acquittal entered after three of many prosecution witnesses had testified); *Sanabria* v. *United States, ante,* p. 54, were erroneous.

It is manifest that the reasons that bar a retrial following an acquittal are equally applicable to a final judgment entered on a ground "unrelated to factual innocence." The heavy personal strain of the second trial is the same in either case. So too is the risk that, though innocent, the defendant may be found guilty at a second trial. If the appeal is allowed in either situation, the Government will, following any reversal, not only obtain the benefit of the favorable appellate ruling but also be permitted to shore up any other weak points of its case and obtain all the other advantages at the second trial that the Double Jeopardy Clause was designed to forbid.

Moreover, the Government's interest in retrying a defendant simply cannot vary depending on the ground of the final termination in the accused's favor. I reject as plainly erroneous the Court's suggestion that final judgments not based on innocence deprive the public of "its valued right to 'one complete opportunity to convict those who have violated its laws,'" *ante,* at 100, quoting *Arizona* v. *Washington,* 434

U. S., at 509,[6] and therefore differ from "true acquittals." The Government has the same "complete opportunity" in either situation by virtue of its participation as an adversary at the criminal trial.[7]

Equally significant, the distinction between the two is at best purely formal. Many acquittals are the consequence of rulings of law made on the accused's motion that are not related to the question of his factual guilt or innocence: *e. g.,* a ruling on the law respecting the scope of the offense or excluding reliable evidence. *Sanabria* v. *United States, ante,* p. 54, illustrates the point.

---

[6] Similarly unpersuasive is the Court's suggestion that its holding is supported by the well-recognized rules that a criminal defendant may twice be tried for the same offense if he either successfully moved for a mistrial at the first trial, see *Lee, supra; United States* v. *Dinitz,* 424 U. S. 600 (1976), or succeeded in having a conviction set aside on a ground other than the insufficiency of the evidence. See *United States* v. *Ball,* 163 U. S. 662 (1896). What distinguishes these situations, of course, is that neither involved a final judgment entered for the accused, and that in both the Government could not be said to have had a complete opportunity to convict the accused.

[7] The Court's suggestion that intervening decisions have somehow undermined *Jenkins* simply will not wash. Although it is quite true that the author of the Court opinion has stated that he understood *Jenkins* to embrace a rule that any midtrial termination that is labeled a "dismissal" erects a double jeopardy bar, see *ante,* at 86 n. 2, quoting *Lee,* 432 U. S., at 36 (REHNQUIST, J., concurring), no Court opinion has adopted the position that the label attached to a trial court's ruling could be determinative. Indeed, since *Serfass* v. *United States,* 420 U. S 377, 392 (1975), which was decided the week after *Jenkins,* explicitly provides that labels are not to have such talismanic significance, the unanimous Court in *Jenkins* could scarcely have contemplated that it had announced such a mechanical formula.

Thus, the Court's suggestion, see *ante,* at 94, that *Lee,* which held that a termination that was labeled a "dismissal" did not erect a double jeopardy bar, could have undermined *Jenkins* is unpersuasive on its face. In *Lee,* we treated the dismissal as the equivalent of a mistrial because both the trial judge and the parties had so regarded it. See 432 U. S., at 29.

In *Sanabria,* the District Court, acting on the defendant's motions, made a series of erroneous legal rulings which began with an erroneous construction of the indictment and culminated in the exclusion of most of the evidence of defendant's guilt. The trial court then granted defendant's motion for a judgment of acquittal on the ground that the remaining evidence was insufficient. *Sanabria* held that the midtrial termination of the prosecution erected an absolute bar to any further proceedings against the defendant, and we reached that result even though the rulings which led to the acquittal were purely legal determinations, unrelated to any question of defendant's factual guilt, and had been precipitated entirely by the defendant's "voluntary choice" to seek a narrow construction of his indictment.

Here the legal ruling that the Court characterizes as unrelated to the defendant's factual guilt itself terminated the prosecution with prejudice. In *Sanabria,* after the District Court rendered the two erroneous rulings that excluded most of the relevant evidence of defendant's guilt, it remained for the trial court to take the *pro forma* step of granting the defendant's motion for a judgment of acquittal. Surely, this difference between the cases should not possess constitutional significance. By holding that it does, the Court suggests that the present case would have been decided differently if the trial court had remedied the due process violation by excluding all the Government's evidence on count one and then entering an acquittal pursuant to Rule 29. *Sanabria* simply confirms that the distinction the Court today draws is wholly arbitrary, bearing no conceivable relationship to the policies protected by the Double Jeopardy Clause.

## II

The Court's definition of "acquittal" compounds the damage that repudiation of *Jenkins* and *Lee* has done to the fabric of double jeopardy law. Not only is this definition unduly

restrictive, it is literally incapable of principled application. The Court's application of its definition to the facts of this case proves the point.

The doctrine of preindictment delay, like a host of other principles and policies of the law—*e. g.,* entrapment, insanity, right to speedy trial, statute of limitations—operates to preclude the imposition of criminal liability on defendants, notwithstanding a showing that they committed criminal acts. Like these other doctrines, the question whether preindictment delay violates due process of law cannot ordinarily be considered apart from the factual development at trial since normally only the " '[e]vents of the trial [can demonstrate] actual prejudice.' " *United States* v. *Lovasco,* 431 U. S. 783, 789 (1977), quoting *United States* v. *Marion,* 404 U. S. 307, 326 (1971); see *United States* v. *MacDonald,* 435 U. S. 850, 858, 858–859 (1978).

Here, therefore, the District Court, quite properly, deferred consideration of the respondent's pretrial motion to dismiss for preaccusation delay until trial. At the close of the evidence, respondent renewed his motion. The District Court recognized that there was sufficient evidence of guilt to permit submission of count one to the jury, but granted the motion as to this count because, evaluating the facts adduced at trial, the court found that the delay between the offense alleged and respondent's indictment had been unjustifiable and had so prejudiced respondent's ability to present his defense as to constitute a denial of due process of law.

A critical feature of today's holding appears to be the Court's definition of acquittal as " 'a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged,' " *ante,* at 97, quoting *United States* v. *Martin Linen Supply Co.,* 430 U. S., at 571. But this definition, which is narrower than the traditional one, enjoys no significant support in our prior decisions. The language quoted from *Martin Linen Supply Co.* was tied to the par-

ticular issue in that case and was never intended to serve as an all-encompassing definition of acquittal for all purposes. Rather, *Martin Linen Supply* referred generally to "acquittal" as "a legal determination on the basis of facts adduced at the trial relating to the general issue of the case," *id.*, at 575 (citations omitted), and this is the accepted definition. See *Serfass* v. *United States,* 420 U. S. 377, 393 (1975), quoting *United States* v. *Sisson,* 399 U. S. 267, 290 n. 19 (1970). This definition, moreover, clearly encompasses rulings pertaining to all "affirmative defenses" that depend on the factual development at trial.

The traditional definition of "acquittal" obviously is responsive to the values protected by the Double Jeopardy Clause. While it perhaps might not be objectionable to permit retrial of a defendant whose first trial was terminated on the basis of a midtrial ruling on a motion that could—because it did not depend upon the facts adduced at trial—have been raised before jeopardy attached, see *Serfass* v. *United States, supra,* at 394,[8] it would be intolerable to permit the retrial of a defendant whose first prosecution ended on the basis of a ruling—like the one in the present case—which could only be made after the factual development at trial. Notably, the Court neither explains why it chooses to reject the more traditional definition of "acquittal" nor attempts to justify its more restrictive definition in terms of the constitutional policy against multiple trials.

But I will not dwell further on this point. As the Court opinion itself demonstrates, what is perhaps as important as the actual definition is how it is applied. The pertinent question, thus, is one the Court never addresses: Why, for pur-

---

[8] In *Serfass,* we reserved decision on the question whether a defendant who was afforded an opportunity to obtain a determination of a legal defense prior to trial but who nevertheless knowingly allowed himself to be placed in jeopardy before raising the defense could claim the protections of the Double Jeopardy Clause. 420 U. S., at 394.

poses of its new definition of "acquittal," is not the fact *vel non* of preindictment delay one of the "factual elements of the offense charged"? The Court plainly cannot answer that preindictment delay is not referred to in the statutory definition of the offense charged in count one, cf. *Patterson* v. *New York,* 432 U. S. 197 (1977), for it states that dismissals based on the defenses of insanity [9] and entrapment—neither of which is bound up with the statutory definition of federal crimes—will constitute "acquittals." *Ante,* at 97–98.

How can decisions based on the trial evidence that a defendant is "not guilty by reason of insanity" or "not guilty by reason of entrapment" erect a double jeopardy bar, and a decision—equally based on evaluation of the trial evidence— that the defendant is "not guilty by reason of preaccusation delay" not also prohibit further prosecution? None of these defenses is bound up in the definition of a crime, and the availability of each depends on the factual development at trial. More fundamentally, to permit a retrial following an appellate court's reversal of a judgment entered on any of these grounds presents all the evils the Double Jeopardy Clause was designed to prevent. The Court offers no satisfactory explanation for the difference in treatment. The suggestion that determinations concerning insanity and entrapment are "factual" whereas dismissals of indictments for preindictment delay represent "legal judgments," see *ante,*

---

[9] A contrary position would not only be inconsistent with *Burks* v. *United States, ante,* p. 1, but would also have untoward consequences for criminal defendants. The premise of such a ruling would necessarily be that a criminal defendant has no legitimate interest in protecting the finality of a verdict of not guilty by reason of insanity. It would then follow that there could be appellate review not only of all directed verdicts of not guilty by reason of insanity, but also of all jury verdicts that had been preceded by a prior finding of guilt of the statutory offense. The implications of such a holding would be particularly significant in jurisdictions providing for bifurcated determinations of guilt and sanity.

at 98, is simply untenable. Consideration of all three defenses requires the application of *legal* standards to the evidence adduced at trial, and the most likely ground for reversal and reprosecution following the entry of a final judgment favorable to the accused on such grounds would be an appellate court's conclusion that the trial court applied an erroneous legal test. The question the Court fails to address, therefore, is why an egregiously erroneous dismissal on entrapment grounds—*e. g.,* a ruling in a federal trial that a defendant has been entrapped as a matter of law because it had been shown that the Government had supplied the contraband the defendant had been charged with selling, cf. *Hampton* v. *United States,* 425 U. S. 484 (1976)—should erect a double jeopardy bar but not a possibly erroneous dismissal on the ground of preaccusation delay. The Court's observation that factual defenses of insanity and entrapment provide "legal justifications for otherwise criminal acts"—and is unlike the doctrine of preindictment delay, which is intended to protect the integrity of the trial process—reflects common legal parlance but in no wise explains why the two classes of dismissals should have different double jeopardy consequences.

Whether or not the Court's *ipse dixit* concerning the consequences of a ruling of unlawful preaccusation delay is defensible, the enormous practical problems that today's decision portends are very clear. A particularly appealing virtue of the *Jenkins* and *Lee* principle—in addition, of course, to its protection of constitutional values—was its simplicity. Any midtrial order contemplating an end to all prosecution of the accused would automatically erect a double jeopardy bar to a retrial. Under today's decision, the thousands of state and federal courts will be required to decide, with only minimal guidance from this Court, the question of the double jeopardy consequences of all favorable terminations of criminal proceedings on the basis of affirmative defenses. The only guidance the Court offers is its suggestion that defenses which

provide legal justifications for otherwise criminal acts will erect double jeopardy bars whereas those defenses that arise from unlawful or unconstitutional Government acts will not. Consideration of the defense of entrapment illustrates how difficult the Court's decision will be to apply. To the extent the defense applies when there has been a showing the defendant was not "predisposed" to commit a criminal act, it perhaps does provide a "legal justification." But the defense of entrapment, in many jurisdictions, see Park, The Entrapment Controversy, 60 Minn. L. Rev. 163, 171–176 (1976), is a device to deter police officials from engaging in reprehensible law enforcement techniques. Is the entrapment defense to erect a double jeopardy bar in such jurisdictions? Are the double jeopardy consequences to depend upon the appellate court's characterization of the operation of the defense in the particular case before it? And what of other traditional factual defenses, which are routinely submitted to the jury and which could be the basis for Rule 29 motions: e. g., the statute of limitations? [10] Ironically, it seems likely that, when all is said and done, there will be few instances indeed in which defenses can be deemed unrelated to factual innocence. If so, today's decision may be limited to disfavored doctrines like preaccusation delay. See generally *United States* v. *Lovasco,* 431 U. S. 783 (1977).

It is regrettable that the Court should introduce such confusion in an area of the law that, until today, had been crystal clear. Its introduction might be tolerable if necessary to advance some important policy or to serve values protected by

---

[10] In any case in which the date upon which the defendant committed the crime is disputed and may have been outside the statute of limitations provided by law, a trial judge could, and probably would, submit this question to the jury along with the general issue. Similarly, in any case in which the evidence adduced at trial revealed that the defendant had committed the criminal act outside the limitation period, the defendant would move for a "directed verdict."

the Double Jeopardy Clause, but that manifestly is not the case.  Rather, today's decision fashions an entirely arbitrary distinction that creates precisely the evils that the Double Jeopardy Clause was designed to prevent.  I would affirm the judgment of the Court of Appeals.