### State v. Derakhshan
*[Cite as 4 AOA 502]*

*Case No. 89-L-14-069*
*Lake County, (11th)*
*Decided June 29, 1990*

*Timothy P. Cannon, Painesville City Prosecutor, 41 East Erie Street, Painesville, Ohio 44077, for Plaintiff-Appellant.*

*Thomas Meros, 736 Standard Building, Cleveland, Ohio 44113, for Defendant-Appellee.*

BASINGER, J.

Appellee, Iraj Derakhshan, was charged with child stealing in violation of R.C. 2905.04. Upon setting the case for trial, a jury was impaneled and opening statements were given by the State of Ohio and by counsel for appellee. At the close of these statements and prior to the presentation of evidence, the defendant moved that the charges be dismissed. The court granted appellee's motion.

The state sets forth the following assignment of error:

"The trial court errored (*sic*) in granting defendant's motion to dismiss where evidence would have established the following: a parent is awarded sole custody of a child or children by the court and the parent subsequently enters into an agreement with the non-custodial parent regarding visitation, and the non-custodial parent/defendant violates the agreement by removing the children from the place they were found without permission."

In September of 1986, Linda Jaenson was awarded temporary custody by the Lake County Domestic Relations Court of her and appellee's minor children, Jamal and Bijan, during the pendency of their divorce. In September of 1986, while the divorce proceedings were in progress, appellee left the country with the two children. Ms. Jaenson ultimately located the boys in Spain and was able to bring one of them back to the United States with her.

Subsequently, on May 26, 1988, pursuant to a hearing conducted on November 2, 1987, Ms. Jaenson was granted a divorce. Custody of the two children was awarded to her "until further order of the court." No visitation to appellee was provided for in the court's order.

Appellee later contacted his ex-spouse and they entered into negotiations concerning appellee's return to the country. As part of the negotiations, the parties entered into an agreement on September 5, 1988, which provided for the return of the remaining child and for visitation with the children by appellee. This schedule specifically provided that appellee would only be entitled to have physical possession of one child at a time. This agreement, however, was never

recognized by a court of law and never had the legal effect of modifying the original divorce decree. The original entry of the trial court which did not provide for any visitation to appellee remained in effect.

On January 25, 1989, appellee, who had physical possession of one child, went to the house of the children's babysitter to drop off the child and pick up the other child. The appellee, however, removed both children from the house and was subsequently arrested for child stealing.

R.C. 2905.04(A) provides:

"(A) No person, by any means and with purpose to withhold a minor from the legal custody of his parent, guardian, or custodian, shall remove the minor from the place where he is found."

The initial question before this court is whether, pursuant to the terms of a nonjudicial agreement which modifies a court-ordered custody provision, a parent who violates that agreement's custody modification can be charged with child stealing in violation of R.C. 2905.04.

There is no question that appellee violated the terms of the secondary agreement which prohibits him from having physical control of both children at one time. The issue as presented is whether violation of this agreement, which was never adopted by the court, can constitute the criminal offense of child endangering.

The court below, in dismissing the case, held that the violation of the agreement did not constitute a violation of "[l]egal custody mean[ing] control over the child." From this language it appears that the trial court concluded that the agreement did not constitute "authority of law." The court held that to qualify, as "under authority of law," the visitation schedule needed to be modified pursuant to court entry.

The trial court correctly held that appellee's violation of the secondary custody agreement does not constitute a criminal violation. However, the court was incorrect in holding that appellee did not violate a court order. The original divorce decree clearly granted sole custody of the children without visitation privileges to Ms. Jaenson. Allegations based upon appellee's action could constitute a violation of the initial court order regarding custody.

The facts, when applied to R.C. 2905.04, if shown beyond a reasonable doubt, could establish a violation of the original custody decree which granted sole and exclusive custody to Ms. Jaenson. Therefore, the trial court incorrectly granted the defendant's motion.

For reasons as stated, the court erred in dismissing the criminal case in that the facts, if proven, could establish a violation of the original custody order.

It is clear that jeopardy has attached in this case in that, at the time of the dismissal by the court, a jury had been impaneled and sworn. *Crist* v. *Bretz* (1978), 437 U.S. 28; *Downum* v. *United States* (1963), 372 U.S. 734; *State* v. *Calhoun* (1985), 18 Ohio St. 3d 373. The question before this court becomes whether or not retrial is barred by the prohibition against double jeopardy.

The appellee argues that the he cannot be retried where a mistrial dismissal is granted on the grounds, correct or not, that defendant simply cannot be convicted of the offense charged. *Lee* v. *United States* (1977), 432 U.S. 23. The holding of *Lee*, however, was further clarified in *United States* v. *Scott* (1978), 437 U.S. 82, to the effect that retrial is not barred where the dismissal is premised on legal grounds in that no determination of factual guilt or innocence has been made. Thus, a review must be made as to whether there has been a determination of factual elements constituting the offense charged.

An analysis of this issue was undertaken by the Ohio Supreme Court in *State* v. *Calhoun, supra,* the court referring to *Scott, supra,* in stating:

"* * *[T]he court embarked on a new course of analysis with respect to the Double Jeopardy Clause. First, the *Scott* court overruled its prior holding in *United States* v. *Jenkins* (1975), 420 U.S. 358. *Jenkins* had held at 370 that the government had no right to appeal the dismissal of an indictment after jeopardy had attached since '* * * further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required on reversal and remand.' (Reaffirmed in *Lee* v. *United States* [1977], 432 U.S. 23.)

"* * * The court is *Scott* focused on whether the termination of the proceedings had been on a ground related to the defendant's guilt or innocence, and emphasized that the public's interest in assuring that each defendant shall be subject to a just judgment on the merits of the case will be fostered by permitting appeals, and thereafter retrials where appropriate, where the termination of the first trial resulted from an erroneous conclusion of law.

"* * *[T]he trial court herein did not terminate these proceedings on the ground that the

prosecution's case was factually insufficient. This court fully recognizes that the termination on such a ground would be tantamount to an acquittal and would operate as a bar to any further prosecution. "(See *Burks* v. *United States* [1978], 437 U.S. 1;" *Id.* at 375-376.

In the within case, the ruling by the court determined that the evidence as presented through opening argument was insufficient to factually establish a basis for the offense. In applying the reasoning of *State* v. *Calhoun,* *supra,* we must conclude that the trial judge made a factual determination, and that said factual determination precludes a retrial of the within case based upon double jeopardy grounds.

Accordingly, the double jeopardy clause of the United States Constitution bars the retrial of the within case.

Based upon double jeopardy prohibitions, the dismissal of the cause of action is affirmed.

*Judgment affirmed.*

MAHONEY, P.J., concurs.
FORD, J., dissents with dissenting opinion.

FORD, J.

While I agree with the majority's conclusion that the court erred by granting a dismissal of the charge, I respectfully dissent from the majority's conclusion that retrial is precluded by the principle of double jeopardy.

As noted by the majority, the analysis of this issue was addressed in *State* v. *Calhoun* (1985), 18 Ohio St. 3d 373. However, in relying upon *Calhoun, supra,* the majority concluded that the trial judge had made a factual finding that the state's evidence was insufficient to establish a basis for the offense. I disagree. It appears, upon a closer analysis of the trial court's undertaking here, that on the contrary, the trial judge made an erroneous conclusion of law which would not preclude a retrial on the merits. This was adopted in *United States* v. *Scott* (1978), 437 U.S. 82 and endorsed in *Calhoun. Calhoun, supra,* at 375.

Specifically, appellee was charged with child stealing in violation of R.C. 2905.04. It provides in pertinent part, "(A) No person, by any means and with purpose to withhold a minor from the legal custody of his parent, guardian, or custodian, shall remove the minor from the place where he is found."

During opening statement, the prosecutor proffered that the state would present evidence that the divorce decree awarded custody to the mother of the two minor boys, and that the decree was silent as to visitation rights of the father. The state was prepared to show that the father went to the babysitter's house and departed with both boys without permission of the mother.

Appellee moved for a dismissal because "there is no court order that [appellee] has violated."

The court noted:

"[T]he charge that will be before the jury, the charge speaks about the defendant withholding the child from the legal custody of the parent. And, as I read the Oh. Jur. instruction in 505.04(a)4, the definition of legal custody which says, quote, '[l]egal custody means control over the child under authority of law,' end quote. The Court is concerned about the application of that instruction and that portion of the charge to the facts of this case, and you've made reference now in your opening statement and now in your arguments to the Court concerning an order of custody of May of 1988 which of course preceded the date of this event and you've also alluded that to the Court that there is a written document known as a separation agreement which the parties have, which apparently from the opening statements, was the basis for this, this charge, and it's the feeling of the Court that a privately executed separation agreement which was not adopted as any part of the court order would not be the proper basis for a charge under this section of the law."

The prosecutor offered the divorce decree which awarded exclusive custody to the mother, and the extrajudicial visitation agreement into evidence. Both were admitted without objection by appellee.

The court then concluded:

"[B]ased on what I have heard so far in the opening statement and now what's been presented to the Court, it's my belief that, and my finding, that we would not expect the evidence to change during the course of the trial or to improve as to what we see now. And it seems clear to the Court that, given that fact situation, that the State would not carry its burden and prove the defendant guilty by proof beyond a reasonable doubt of this particular charge, and therefore I'm going to grant the motion of the defendant to dismiss the charge, and I'll do that at the State's cost, unfortunately."

From this dialogue, it appears to this jurist that the trial court has made an incorrect appli-

cation of law regarding the determination of legal custody based upon the opening statement and has not made any factual conclusion which would act as a bar to retrial based upon the principles of double jeopardy. The trial judge correctly discounted the visitation agreement as not having any "legal" effect in determining "legal custody." However, based upon his colloquy in the record, it appears to this writer that he also excluded the divorce decree and custody award in making his determination that appellee had not withheld the minor from the legal custody of his parent, in this cause, the mother. This document awarded sole custody of the boys to the mother, and the appellee could not legally remove either boy from the place where he was found without being subjected to criminal prosecution for child stealing.

For these reasons, I respectfully dissent finding that retrial is not precluded by the principles of double jeopardy as announced in *Calhoun, supra.*