OPINION
{¶ 1} This case arose from an aborted standoff between appellant Eugene Serafini and three deputies from the Stark County Sheriff's Department.
 {¶ 2} On February 11, 2005, at approximately 12:45 a.m., the Stark County Sheriff's Department received a call about a domestic disturbance at 1530 33rd Street S.W., Canton Township, Stark County, Ohio. The caller reported that appellant Eugene Serafini was destroying the inside of the residence. Three deputies responded to the scene. Sergeant Springer was in a cruiser with Deputy Pittman, an officer in training, and Sergeant Purdue arrived alone. (T. April 22, 2005 at 116-17; 193).
 {¶ 3} Sergeant Springer and Deputy Pittman made contact with two women inside the residence and began looking around outside for the suspect. Sergeant Springer noticed an individual standing by the open door of a pickup truck, and someone inside identified the person as the appellant. Sergeant Springer could see that the appellant had something in his hand but could not identify the object. As Deputy Pittman made his way toward the appellant, Sergeant Springer advised Pittman to stay behind a tree. (Id. at 122-25; 176-77).
 {¶ 4} Sergeant Purdue had a better view of the appellant from where he stood, and saw that appellant had a gun. Sergeant Purdue yelled warnings to the other officers that appellant was armed. All three officers yelled repeatedly to appellant that he should drop the gun. Sergeant Springer returned to his cruiser and drove it to a different position to turn a spotlight on appellant. Both Springer and Purdue also activated their microphones and in-car video camera systems to record the events. Sergeant Springer released his shotgun, got out of the cruiser, and positioned himself looking over the roof of the cruiser toward appellant. (Id. at 126-29; 198-202).
 {¶ 5} Appellant appeared to have an SKS assault-type rifle in his hands. The officers knew that ammunition from such a weapon was capable of penetrating vehicles and trees. The officers repeatedly yelled to appellant to drop the weapon, but he appeared to become agitated and eventually fired two rounds into the ground. Appellant retrieved another weapon from inside the truck, which also appeared to be an assault-type weapon. The second weapon apparently jammed when appellant tried to load it. Appellant grabbed the firearm by its barrel and began beating it against the rear of the truck, breaking apart the rear window. Appellant picked up the first weapon and reloaded it. He fired a few more shots into the ground. Deputy Pittman and Sergeant Purdue were struck by flying gravel spewed by the gunshots. (Id. at 134; 136-39; 1798-1; 198-99; 207-8; 213).
 {¶ 6} During the confrontation, the deputies constantly "verbalized" with appellant, repeatedly telling him to drop the weapon. The deputies continued to ask appellant to drop his rifle even after appellant had fired several times. Appellant responded to the officers with statements such as "you're going to have to shoot me" and "are you ready for the shootout at the O.K. Corral?" Appellant stated that he was not playing around, and several times began counting down "one, two, three . . ." Appellant pointed the firearm up in the air and down at the ground. (Id. at 136-39; 178; 180; 199-200). These statements are not audible on the video tape of the incident.
 {¶ 7} While Deputy Pittman was concealed behind a tree, he shone his flashlight on appellant. When the light hit him, appellant asked who was there, and the officers responded that it was another deputy. Appellant said, "tell him to move or I'm going to shoot him." He rotated, raising the barrel of his weapon from hip level, in the direction of Deputy Pittman. Sergeant Springer immediately fired three shots, striking appellant and bringing him to the ground. (Id. at 139-40; 183-84; 206-7). The appellant's statements are not audible on the video tape of the incident.
 {¶ 8} In the aftermath of the standoff, appellant was treated for his injuries and arrested.
 {¶ 9} Michael Short of the Stark County Crime Lab investigated the crime scene, diagramed the location and collected evidence. Short also examined the weapons seized from appellant, which included a .30 caliber M-1 carbine, a select-fire military weapon. This firearm could be switched from semi-automatic to fully-automatic with the flip of a switch. This firearm was determined to be operable, and fired .30 caliber carbine cartridges, which are fast-moving bullets designed to travel long distances in combat. This ammunition is capable of penetrating cover.
 {¶ 10} Short also recovered a damaged .223 caliber E.A. Company Model T-15 semiautomatic rifle. The front of the barrel was broken off, and a .223 caliber cartridge was jammed in the action. This weapon was described as "conditionally operable" because while it would fire, it would not function properly due to the damage. (Id. at 2404-4).
 {¶ 11} Short collected numerous cartridges from inside the vehicle and the ground surrounding the vehicle. He found three rounds that had been fired from the .30-caliber rifle. (Id. at 245; 250-51).
 {¶ 12} Two witnesses testified on appellant's behalf at trial. Appellant's mother testified that he was intoxicated on the night of the standoff, and defense private investigator Michael Durkin testified about his own diagram of the crime scene. (Id. at 258; 261-70).
 {¶ 13} Appellant was charged by indictment with one count of felonious assault with a firearm specification a felony of the first degree in violation of R.C. 2903.11(A) (2) and two counts of unlawful possession of dangerous ordnance felonies of the fifth degree in violation of R.C. 2923.17(A).
 {¶ 14} Prior to trial, appellant filed a demand for discovery and a request for a bill of particulars, and the State responded.
 {¶ 15} Appellant entered pleas of guilty to counts two and three, possession of a dangerous ordnance, before the jury trial commenced.
 {¶ 16} Count one, felonious assault with a firearm specification, proceeded to trial by jury. Appellant raised his first objection during the State's opening statement. When the prosecutor stated that appellant made statements such as "Ready for the O.K. Corral?'' appellant's trial counsel objected that this oral statement had not been provided in discovery and could not be heard on the videotape of the incident. The State conceded that this oral statement had not been provided in writing to the defense, but argued that the statement was audible on videotapes, which had been provided to the defense. The prosecutor acknowledged that the statements might not be clear on the tapes. The trial court sustained the objection as to appellant's statements that could not be heard clearly on the tape.
 {¶ 17} This issue arose again during direct examination of Sergeant Springer, the State's second witness. Describing the conversation between appellant and deputies in the midst of the standoff, Springer stated that appellant asked who was behind a tree, and threatened that if there was a deputy hiding there, he was going to shoot him. (T. April 21, 2005 at 200-01). Appellant's trial counsel objected on the ground that this statement had not been disclosed in discovery. The State responded that while a word-for-word summary of appellant's statements may not have been provided, the fact that appellant made verbal threats to shoot the officers was disclosed. (Id. at 201). Appellant moved for a mistrial on the grounds of prosecutorial misconduct. (Id. at 202). In weighing appellant's motion for mistrial, the Court stressed that while there was no evidence of intentional misconduct, a mistrial would be granted from an abundance of caution:
 {¶ 18} "THE COURT: Well, what I am going to do is to be on the safe side, I have already told you that I think these are pretty important statements because they allegedly go to the state of mind of the Defendant that he was intending to do something. And for the Defense Counsel to not be aware of these statements and having already told the jury his theory of the case as to what was going to happen seems to me to be prejudicial to the Defense.
 {¶ 19} "Now, I'm not willing to say this was intentional because of the fact that, number one, you had the statements, had access to the — or you had the tape?
 {¶ 20} "[DEFENSE COUNSEL]: Tape.
 {¶ 21} "THE COURT: And you also had access to the witnesses, but the point of the matter is, that when it comes to statements that are inculpatory, I want them, I want the other side to have all the cards on the table.
 {¶ 22} "So while I do not believe this is based on misconduct, it's based on an abundance of fairness.
 {¶ 23} "I am going to at this point in time declare a mistrial. We will retry the case after you have had an opportunity to receive all statements attributable to the Defendant that are in any way, shape or form inculpatory relative to his state of mind what his intentions were, and/or give full opportunity to talk to these people if they wish to talk to him, but I don't want any surprises.
 {¶ 24} "It's that simple and then we will try this case with both sides understand [sic] exactly what was said. Okay." (T. April 21, 2005 at 202-03).
 {¶ 25} The State provided appellant with supplemental discovery, including written summaries of his statements, and the retrial commenced the following day. Appellant moved for discharge on the basis of double jeopardy. In overruling this motion, the trial court reiterated that there was no misconduct by the State, and that the mistrial was granted from an abundance of caution. (T. April 22, 2005 at 10-11).
 {¶ 26} The case proceeded to a second jury trial, and appellant was found guilty as charged. The trial court sentenced appellant to a total prison term of ten years.
 {¶ 27} Appellant timely appeals raising the following two assignments of error for our consideration:
 {¶ 28} "I. THE NON-DISCLOSURE OF DEFENDANT'S ALLEGED STATEMENTS BY THE STATE AMOUNTED TO INTENTIONAL PROSECUTORIAL MISCONDUCT THAT WARRANTED DOUBLE JEOPARDY PROTECTION AFTER A MISTRIAL WAS GRANTED AFTER THE FIRST TRIAL.
 {¶ 29} "II. DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED."
 I. {¶ 30} Appellant argues that his retrial was barred by double jeopardy because the State committed intentional misconduct by not providing his oral statement to the defense during discovery pursuant to Crim. R. 16(B)(1)(f). We disagree.
 {¶ 31} Crim.R. 16(B) (1) (f) provides: "(f) Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. The certification and the perpetuation provisions of subsection (B) (1) (e) apply to this subsection."
 {¶ 32} Crim.R. 16(B) (1) (a) provides, in part:
 {¶ 33} "Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 {¶ 34} "* * *
 {¶ 35} "(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer [.]"
 {¶ 36} The evidence in question was not "favorable to the defendant." Accordingly, Crim. R. 16(B) (1) (f) is not implicated. However, the record is clear that the state violated Crim.R. 16(B) (1) (a) (ii) by failing to provide defense counsel with a written summary of appellant's oral statements. Statev. Bidinost, 71 Ohio St.3d 449, 1994-Ohio-465, 644 N.E.2d 318. At trial, the assistant prosecuting attorney informed the court that while a word-for-word summary of appellant's statements may not have been provided, the fact that appellant had made verbal threats to shoot the officers was disclosed. (1T. at 201). As the Ohio Supreme Court noted: "the `spirit of the law' was not fulfilled by anything less than strict adherence to the rule. As White [the prosecuting attorney] correctly recognized, Crim.R. 16(B) (1) (a) (ii) required that she reduce the statement to writing, in the form of a summary, to be provided to the defense during discovery. Obviously, we did not draft the criminal rules of discovery to waste anyone's time. Rather, we specifically drafted the rules to ensure the fairness of criminal proceedings". Bidinost, supra, at 456, 64 N.E.2d at 324.
 {¶ 37} Crim.R. 16(E) (3) provides for the regulation of discovery and permits a trial court to exercise discretion in selecting the appropriate sanction for a discovery violation.State v. Wiles (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97;State v. Parson (1983), 6 Ohio St.3d 442, 453, 453 N.E.2d 689. Specifically, Crim.R. 16(E) (3) provides:
 {¶ 38} "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 39} Generally, a trial court must impose the least severe sanction for a discovery violation that is consistent with the purposes of the rules of discovery. City of Lakewood v.Papadelis (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138, syllabus. InState v. Joseph, 73 Ohio St.3d 450, 458, 653 N.E.2d 285,1995-Ohio-288, the Ohio Supreme Court articulated the standard for reversals in the context of discovery violations, stating that:
 {¶ 40} "Prosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." Id., citing Parson at 445,453 N.E.2d 689.
 {¶ 41} In the case sub judice, there is no dispute that the State did not reduce the statements to writing, in the form of a summary, to be provided to the defense during discovery even though appellant had requested all relevant statements made by a defendant or co-defendant in his request for discovery.
 {¶ 42} However, we do not find that the trial court abused its discretion by declaring a mistrial and granting a retrial.
 {¶ 43} When a criminal defendant successfully moves for a mistrial, double jeopardy bars retrial only if the prosecutor's conduct was intended to deliberately provoke the defendant into requesting a mistrial. State v. Doherty (1984),20 Ohio App.3d 275, 276, citing Oregon v. Kennedy (1982), 456 U.S. 667; UnitedStates v. Thomas (C.A.6, 1984), F.2d 313; and State v.Montgomery (1982), 3 Ohio App.3d 280.
 {¶ 44} In State v. Doherty, supra, the Court of Appeals for Hamilton County concisely set forth the law applicable to the case before us:
 {¶ 45} "The general rule is that retrial is not barred when a mistrial is requested by a defendant and granted on his behalf.Montgomery, supra. A defendant's motion for a mistrial is a deliberate choice on his part to forego his right to have the first jury determines his fate. United States v. Scott (1978),437 U.S. 82. * * * Nevertheless, a narrow exception to the general rule exists when `governmental actions [are] intended to provoke mistrial requests and thereby * * * subject defendants to the substantial burdens imposed by multiple prosecution.' UnitedStates v. Dinitz (1976), 424 U.S. 600, 611.
 {¶ 46} "In Oregon v. Kennedy, supra, at 679, the Supreme Court held:
 {¶ 47} "`* * * [T]he circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial wasintended to provoke the defendant into moving for a mistrial.' (Emphasis added.)
 {¶ 48} "Oregon, supra, makes clear that prosecutorial misconduct will bar a second trial only when such behavior was `intentionally' calculated to cause or invite mistrial." Statev. Doherty, supra, at 276. (See also, in accord, State v.Glover (1988), 35 Ohio St.3d 18, 20.)
 {¶ 49} In State v. Montgomery, supra, the Hamilton County Court of Appeals specifically addressed the failure of the state to disclose the existence of a statement of a co-defendant prior to trial and held that a defendant can be retried consistently with the doctrine of double jeopardy when his first trial ended in a mistrial due to the prosecutor's violation of Crim.R. 16(B). In arriving at its conclusion, the court of appeals analyzed the issue in the following terms directly applicable to the case before us:
 {¶ 50} "* * * In determining whose interest shall prevail, the public's or the defendants', the critical inquiry is whether the defendants' opportunity for acquittal has been impaired by the mistrial; in the obverse, it is whether the prosecution has, as a result of the mistrial, gained an advantage in the subsequent trial.
 {¶ 51} "The factors favoring a new trial in the instant case and affirmance of the judgment below are several. Although the mistrial was caused by the prosecutor's failure to disclose under circumstances that imply negligence (when most charitably viewed), the prosecutor obviously did not intend to cause a mistrial. If anything, he wished to proceed to judgment in the first trial, and the declaration of a mistrial was to his disadvantage. On the other hand, the defendants now have the advantage of having [the co-defendant's] testimony in the first trial as well as her written statement, and they have information superior to what they had at the first trial." Id. at 282. See also, State v. Barham (Dec. 7, 1989), 3rd Dist No. 4-88-4.
 {¶ 52} We have carefully reviewed the record and agree with the trial court that there is insufficient evidence to conclude that the State acted with intent to "goad" appellant into asking for a mistrial. "We do conclude that [the State] showed a woeful lack of comprehension of the purpose behind the discovery rules in this state: to provide full disclosure of evidence to the accused before trial so that due process is served. The trial court made appropriate orders in each instance to ensure that appellant's right to a fair trial was preserved". State v.Roughton (1999), 132 Ohio App.3d 268, 279, 724 N.E.2d 1193,1200.
 {¶ 53} We determine that the declaration of a mistrial in the instant case neither impaired appellant's chances for acquittal nor inured to the benefit of the prosecution. The undisclosed statements of the appellant tended to incriminate him. Further, the appellant here commenced the second trial with the advantage of having already heard the testimony of several of the state's witnesses, just as emphasized in Montgomery, supra.
 {¶ 54} Because we do not perceive any substantial prejudice to appellant's right to a fair trial, we conclude that the court made no error.
 {¶ 55} Appellant's First Assignment of Error is overruled.
 II. {¶ 56} In his Second Assignment of Error appellant maintains that his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 57} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt,State v. Jenks (1991), 61 Ohio St. 3d 259, 273, 574 N.E.2d 492,503.
 {¶ 58} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 59} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins
(1997), 78 Ohio St. 3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment."State v. Thompkins, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St. 2d 230, syllabus 1.
 {¶ 60} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency."State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue ofsufficiency. Cuyahoga Falls v. Scupholm (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735. [Emphasis in original].
 {¶ 61} R.C. 2903.11(A) provides a definition of felonious assault:
 {¶ 62} "(A) No person shall knowingly do either of the following:
 {¶ 63} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance * * *."
 {¶ 64} Simply pointing a gun at another is not enough to prove an attempt to cause physical harm. State v. Brooks
(1989), 44 Ohio St.3d 185, 192, 542 N.E.2d 636, 642. "Something more" is required to establish intent. Verbal threats or other demonstrative evidence which are perceived by a reasonable person under the circumstances to be a threat could fulfill the requirement for additional evidence. State v. Green (1991),58 Ohio St.3d 239, 241, 569 N.E.2d 1038, 1041. That threat must indicate an intention to use that weapon. Id. at 241-242,569 N.E.2d 1038.
 {¶ 65} In the case at bar, the State introduced evidence, not disputed by appellant, that appellant possessed two (2) high powered automatic assault-type rifles with ammunition. (T. April 22, 2006 at 133; 138; 181; 198-99; 236; 240). Appellant fired several rounds into the ground. (Id. at 137-39; 165; 180-81). Appellant told the officers that they would have to shoot him. (Id. at 180; 199-200). He asked the officers "are you ready? I'm ready," and began counting down. (Id.). Testimony was presented by the State that when Deputy Pittman shone his flashlight on appellant, appellant told the officers on two occasions "tell him to move or I'm going to shoot him." (Id. at 140-41). Appellant raised the barrel of the gun from the direction of the ground to the direction of the house and Deputy Pittman at which time appellant was shot by Sergeant Springer. (Id. at 139-40; 149; 166-68; 183; 206-207).
 {¶ 66} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime felonious assault.
 {¶ 67} We hold, therefore, that the state met its burden of production regarding each element of the crime of felonious assault and, accordingly, there was sufficient evidence to support appellant's convictions.
 {¶ 68} Although appellant cross-examined the State's witnesses in an attempt to show the inconsistencies in the various statements and further in an attempt to demonstrate that appellant never "aimed" his assault rifle at any officer in particular to contradict the State's inference that he knowingly attempted to cause physical harm to another, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67,197 N.E.2d 548; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 69} We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant knowingly attempted to cause physical harm to another by means of a deadly weapon. R.C. 2903.11(A). Accordingly, appellant's conviction for felonious assault was not against the manifest weight of the evidence.
 {¶ 70} Appellant's Second Assignment of Error is overruled.
 {¶ 71} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Gwin, P.J., Hoffman, J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed. Costs to appellant.