[Cite as *State v. Graber*, 2020-Ohio-5324.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190244 |
| | | TRIAL NO. B-1705739 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| GREG GRABER, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 18, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Rubenstein & Thurman, L.P.A.,* and *Scott A. Rubenstein*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1}    Defendant-appellant Greg Graber appeals his convictions for two counts of aggravated robbery, one of which was accompanied by a firearm specification, and one count of having a weapon while under a disability.  Graber's convictions stem from an armed robbery of two Indiana residents in a downtown Cincinnati parking garage.  Because we determine that Graber's assignments of error are without merit, we affirm the judgment of the trial court.

## Background

{¶2}    On Memorial Day weekend 2017, John Robinson and his girlfriend, Minju Kim, visited Cincinnati from Bloomington, Indiana, for dinner and a night out.  At approximately 1:00 a.m., Robinson and Kim left a downtown nightclub and headed to Kim's car, which was parked in a nearby parking garage.  The two passed some police officers on duty near the club and a security guard, who waved and told them to be careful.  As they approached Kim's parked car, Robinson pushed the unlock button on the key fob, which made a sound.   Robinson and Kim noticed a male stand up from in between Kim's car and a car parked to the right of Kim's.  Kim and Robinson continued to walk to their car.  As they opened their respective car doors and got inside, the man put a gun into Robinson's side.  He told Robinson and Kim to give him all of their belongings.  The two complied with the gunman.  Just as the two had finished handing over everything to the gunman, a heavy-set man came running toward them.   Robinson and Kim quickly identified the man as the gunman's accomplice.  The gunman and accomplice then hurriedly escaped on foot through a set of doors in the parking garage.

2

{¶3} Kim and Robinson ran back to where they had seen the security guard and police officers, and they screamed that they had just been robbed. Some of the officers went in the direction where the men had fled, but the officers turned around once they determined that the search was fruitless. According to Robinson and Kim, one of the police officers took notes on the incident, but the police did nothing else to help the two out-of-towners at that time.

{¶4} Robinson and Kim returned to their parked car, where Robinson noticed his work cell phone lying on the parking garage floor. Without a car key and without money, however, Kim and Robinson wandered around downtown Cincinnati in hopes of finding help. The two came across a gentleman who gave them $40. Kim then decided that they should use Robinson's work phone to call her stolen phone, but no one answered the call. A couple of hours later, however, a woman called Robinson's work phone from a phone number with a 513 area code. The woman asked Robinson how he had gotten her "man Greg's" number. Robinson was confused and still disoriented from the robbery, and he thought the caller must have been the wife of the man who had given him $40. Robinson explained to the woman that her husband had given them money. The woman responded that her husband would not have given anyone money, and she hung up the phone.

{¶5} Because neither Kim nor Robinson knew anyone from the Cincinnati area, Kim determined that the woman calling could be related to the man who had robbed them. The two searched the caller's phone number in Facebook, which linked the caller's number to Graber's account. When Kim and Robinson viewed the photographs on Graber's Facebook account, they immediately recognized Graber as the gunman who had robbed them.

{¶6}   Robinson and Kim continued to call Cincinnati police with their new information, even after they returned to Indiana.  Eventually, an investigating officer called them back, and Kim and Robinson told the officer how they had done their own detective work to identify Graber.

{¶7}   The investigating officer requested that Kim and Robinson come back to Cincinnati to view a photo lineup.  Kim and Robinson both separately identified Graber's picture as the gunman.  The investigating officer also downloaded the call log from Robinson's work phone to verify the story of the outgoing phone call to Kim's phone, and a return call by a 513 number.  The investigating officer then sent a search warrant to the cellphone carrier of the 513 number to obtain the accountholder information.  Upon discovering that the account for the 513 number was listed in Graber's name, the state charged Graber with two counts of aggravated robbery, accompanied by firearm specifications, and having a weapon while under a disability.

{¶8}   Graber filed a motion to suppress the identification made by the victims as a result of the photo lineup.  The trial court overruled his motion, and as a result of hearing the evidence presented at the motion-to-suppress hearing, the trial court denied Graber's request to waive his right to a jury trial.  The case proceeded to a jury trial.  During the first day of trial, Graber requested a mistrial based upon the trial court's refusal to permit him to waive his right to a jury trial.  The trial court declared a mistrial, excused the jury, and entered a recusal.  Graber's case then proceeded to a second jury trial.  The jury found Graber guilty as to all counts.  After merging the firearm specifications, the trial court sentenced Graber to 22 years and six months in prison.  This appeal ensued.

**Motion to Suppress Identification**

4

{¶9} We address Graber's fourth assignment of error first, in which Graber argues that the trial court erred in overruling his motion to suppress the photo identification of him made by the victims at the police station. Ordinarily, appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Graber only challenges legal conclusions, so we will conduct a de novo review of the court's application of the law. *See id.*

{¶10} Evidence of an eyewitness's pretrial identification of a suspect must be suppressed at trial where the identification procedure employed "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In determining whether suppression is justified, the court must first determine whether the identification procedure was unnecessarily suggestive. *Id.* A photo array is unduly suggestive "if it steers the witness to one suspect, independent of the witness's honest recollection." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 208, citing *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir.2001). Even if an identification procedure was unnecessarily suggestive, the identification will not be suppressed if the identification is reliable under the totality of the circumstances. *Biggers* at 197.

{¶11} R.C. 2933.83 sets forth minimum procedures for law enforcement to use when conducting photo lineups, which include: the use of a blind or blinded administrator if practicable; a written record of date, time, identification or nonidentification, an eyewitness's confidence statement, and those present during the lineup; and the administrator informing the eyewitness that the suspect may or may not appear in the lineup. R.C. 2933.83(B)(1)-(5).

{¶12} Graber argues that the use of a photo lineup by police was unconstitutionally suggestive, because the victims had uncovered Graber's identity prior to the lineup, and thus the police's action of including Graber in the lineup was a "sham." Nothing about the state's action was unduly suggestive. The police used a blind administrator and showed the photo lineup to the victims separately in compliance with R.C. 2933.83(B). Robinson and Kim had already identified Graber through Facebook, and the police used the lineup merely to verify the victims' identifications.

{¶13} Because the trial court did not err in overruling Graber's motion to suppress, we overrule the fourth assignment of error.

### The Mistrial and Subsequent Trial

{¶14} We address Graber's third assignment of error next, in which Graber argues that his retrial violated his constitutional double-jeopardy rights.

{¶15} As an initial matter, we note that Graber failed to challenge his retrial in the trial court. Failure to timely challenge a constitutional violation results in forfeiture of the issue, except as to plain error. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. Plain error, or defects affecting substantial rights, must result in a reasonable probability of prejudice to the defendant, and should only be recognized by appellate courts in exceptional circumstances. Crim.R. 52(B); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

{¶16} The Double Jeopardy Clause protects a criminal defendant against repeated prosecutions for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *State v. Kareski*, 137 Ohio St.3d 92, 2013-Ohio-4008, 998 N.E.2d 410, ¶ 14. In cases where a trial court judge sua sponte

6

declares a mistrial, the Double Jeopardy Clause generally does not bar retrial unless prosecutorial misconduct led the judge to declare a mistrial, or the declaration was an abuse of discretion. *State v. Glover*, 35 Ohio St.3d 18, 21, 517 N.E.2d 900 (1988). In cases where a defendant requests a mistrial, the Double Jeopardy Clause does not prevent retrial. *United States v. Scott*, 437 U.S. 82, 83, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). A defendant's request for a mistrial "is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined by the first trier of fact." *Id.*

{¶17} Graber's double-jeopardy argument is predicated on the assumption that the trial court sua sponte declared a mistrial; however, the record shows that Graber requested the mistrial. The original trial court judge refused to allow Graber to waive his right to a jury trial. After Robinson testified on the first day of the jury trial, Graber brought to the trial court's attention a 1931 case in which the Ohio Supreme Court held that a trial court cannot refuse a defendant's pretrial request to waive his right to a jury trial. *See State v. Smith*, 123 Ohio St. 237, 174 N.E. 768 (1931). At that point, the trial court asked Graber if he wanted the court to grant a mistrial based upon the court's earlier refusal to conduct a bench trial, and Graber's counsel responded that "in the effort of judicial efficiency, we ask that this matter stop on this particular day."

{¶18} Because the record shows that Graber requested a mistrial, which the trial court then granted, the Double Jeopardy Clause is not implicated. *See Scott* at 83. Graber has not demonstrated that his retrial resulted in plain error. Therefore, we overrule Graber's third assignment of error.

**Weight and Sufficiency of the Evidence**

7

{¶19} Graber's first and second assignments of error attack the weight and sufficiency of the evidence adduced to support his convictions.

{¶20} When this court reviews a challenge to a conviction based upon the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. By contrast, when this court considers a challenge to the weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶21} The state's theory of the case showed that Robinson and Kim solved their own crime. When a woman called Robinson's work cell phone just hours after the robbery from a phone number with a 513 area code, and the woman wanted to know who had called her man, Greg, Robinson and Kim quickly realized that the woman must have had Kim's stolen phone and had seen the missed call from Robinson's work phone. Robinson and Kim were not from Cincinnati, they knew no one in the area, and very few people had access to Robinson's work cell phone number. Once the victims tied the phone number to Graber through a Facebook search, and they saw his profile picture, they were convinced that Graber had robbed them.

{¶22} The evidence showed that the victims had a clear view of Graber in the well-lit parking garage, because Graber did not have anything covering his face, and he was at close range. To corroborate why the woman calling must have been Graber's jealous wife, the state introduced a post made to Graber's Facebook account just a day after the crime, in which Graber said, "Mannnnn..U thirsty ass bitches need to stop. I'm not leaving my wife and my wife not leaving me. Flat out!!!" The police then sent a search warrant to the cell phone provider of the 513 number used by the woman to call Robinson's work cell phone. The police then linked the 513 number to Graber.

{¶23} Graber points to the lack of physical evidence tying him to the crime, as well as the fact that the police officers standing some 20 to 30 yards away from the crime scene could not corroborate that a crime occurred. Given the overwhelming evidence tying Graber to the crime, however, we determine that Graber's convictions were supported by sufficient evidence, and the jury did not lose its way or create such a manifest miscarriage of justice that his convictions must be reversed.

{¶24} We overrule Graber's first and second assignments of error.

### Conclusion

{¶25} Having overruled Graber's four assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P.J.,** and **CROUSE, J.,** concur.

Please note:
The court has recorded its own entry this date.

9