# Supreme Court of Florida

_____

No. SC2021-1479
_____

**DAVID WILLIAM TRAPPMAN,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

February 8, 2024

CANADY, J.

Petitioner David William Trappman was not cooperative when law enforcement officers came to his home to arrest his wife. As the officers were attempting to make the arrest, Trappman shoved an officer. After the officer shoved back, Trappman responded by siccing a pit bull on the officer. For shoving the officer, Trappman was convicted of battery of a law enforcement officer. For siccing the dog on the officer, with the resulting bite and scarring of the officer's leg, Trappman was convicted of aggravated battery of a law enforcement officer.

In Trappman's appeal, the First District Court of Appeal rejected an argument that the protection against double jeopardy precluded his dual convictions and sentences. *Trappman v. State*, 325 So. 3d 944, 945 (Fla. 1st DCA 2021). The court concluded that although the two offenses occurred in one criminal episode, they were based on distinct acts for which multiple punishments could be imposed without a double jeopardy violation. *Id.* at 946. Recognizing that the decision of the Fourth District Court of Appeal in *Olivard v. State*, 831 So. 2d 823 (Fla. 4th DCA 2002), involved a similar fact pattern but reached a different result on the double jeopardy issue, the First District certified that its decision was in direct conflict with *Olivard*. *Trappman*, 325 So. 3d at 947. Based on the certified conflict, we decided to exercise jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

Because we agree with the First District that the shoving of the officer and the subsequent siccing of the dog on the officer were distinct criminal acts for which separate punishments were properly imposed, we approve the conclusion in *Trappman* that no double jeopardy violation occurred. And we disapprove *Olivard* as inconsistent with our reasoning here.

In explaining our decision, we first review the facts of the incident that resulted in the charges against Trappman and the First District's disposition of Trappman's appeal and compare that decision with the conflict decision. We then examine double jeopardy principles, focusing particularly on the multiple-punishment analytical framework set forth in the United States Supreme Court's landmark decision of *Blockburger v. United States*, 284 U.S. 299 (1932). Next we turn to the *Blockburger*-inspired rule of construction regarding multiple punishments contained in section 775.021(4), Florida Statutes (2017). Finally, we consider the arguments of the parties on the conflict issue and then analyze Trappman's conduct, concluding that separate impulses resulting in distinct criminal acts justify Trappman's dual convictions and sentences.

## I.

As explained by the First District, officers arrived at Trappman's home "to execute an arrest warrant for his wife." *Trappman*, 325 So. 3d at 945.

> Once officers entered the home, [Trappman] was instructed to proceed back outside with his two dogs while the warrant on his wife was executed. At trial,

officers testified that [Trappman] initially complied; however, once outside, he began to rile up the dogs by banging their heads together and yelling at them. He eventually reappeared in the doorway of the home holding both dogs by the collars and refused the officers' orders to go back outside. Sergeant Bird—the victim of both batteries—testified that when he approached, [Trappman] reached out and shoved him with one hand. Sergeant Bird responded by driving [Trappman] towards the front door with both hands. [Trappman] then let go of a dog while exclaiming "dog up, dog up." The dog, a pit bull, leapt at Sergeant Bird and latched onto his leg, causing injury and subsequent scarring.

*Id.* Trappman was charged with battery of a law enforcement officer and aggravated battery of a law enforcement officer.[1]

"The theory of the State's case was that [Trappman] had initially committed battery by shoving Sergeant Bird, and that he separately committed aggravated battery by subsequently 'siccing' the dog on Bird." *Id.* Agreeing with the State, the First District held that Trappman's acts of shoving a police officer and then siccing a dog on the officer were "distinct acts" rendering double jeopardy inapplicable, notwithstanding that the two acts "occurred over the

---

1. Trappman was also charged with resisting arrest. That charge is not at issue.

course of approximately one minute" and "were part of a single criminal episode." *Id.* at 946.

The First District certified conflict with the decision of the Fourth District in *Olivard.* There, the defendant was convicted of battery (for hitting the victim) and aggravated battery (for biting off the victim's ear). 831 So. 2d at 824. The Fourth District reversed the lesser conviction, reasoning that the defendant's "actions were within the course of one continuous episode attacking [the victim]." *Id.* The Fourth District, which did not discuss the notion of "distinct acts," viewed the defendant's conduct as "a single act," and concluded that dual punishments for the greater offense of aggravated battery and the lesser included offense of battery could not be imposed for such a "single act." *Id.*

## II.

The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Amend. V, U.S. Const. The protections of this federal constitutional provision are applicable to the States through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 787 (1969). In any event, the Florida Constitution contains a

similar provision, which states that no person shall "be twice put in jeopardy for the same offense." Art. I, § 9, Fla. Const. We have said "that our own double jeopardy clause in article I, section 9, Florida Constitution, which has endured in this state with only minor changes since the constitution of 1845, was intended to mirror [the] intention of those who framed the double jeopardy clause of the fifth amendment." *Carawan v. State*, 515 So. 2d 161, 164 (Fla. 1987); *see also Trotter v. State*, 825 So. 2d 362, 365 (Fla. 2002) ("The scope of the Double Jeopardy Clause is the same in both the federal and Florida Constitutions.").

The decisions of the United States Supreme Court "have recognized three separate guarantees embodied in the Double Jeopardy Clause: It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justs. of Bos. Mun. Ct. v. Lydon*, 466 U.S. 294, 306-07 (1984) (citing *Illinois v. Vitale*, 447 U.S. 410, 415 (1980)).[2]

---

2. Mistrials can also trigger application of the double jeopardy clause in some circumstances. *See United States v. Scott*, 437 U.S. 82 (1978).

In applying each of the three guarantees, the essential determination is whether one charge against a defendant is for the "same offense" as another charge against that defendant. And for double jeopardy protection to apply, most succinctly put, the offenses must be "the same *in law* and *in fact.*" *Burton v. United States*, 202 U.S. 344, 380 (1906) (quoting *Commonwealth v. Roby*, 12 Pick. 496, 502 (Mass. 1832)); *see also Boswell v. State*, 20 Fla. 869, 875 (1884) ("In considering the identity of the offence, it must appear . . . that the offence charged in both cases was the same *in law* and *in fact.*" (quoting *Roby*, 12 Pick. at 509)).

## A.

Here, the third guarantee—"against multiple punishments for the same offense"—is at issue. A framework for analyzing such multiple-punishment double jeopardy questions is laid out in *Blockburger*, which addresses the distinct questions of how to determine both whether offenses are the same "in fact" and whether they are the same "in law." The first inquiry addresses whether conduct transgressing a single prohibition is subject to multiple punishments, and the second is aimed at determining whether a single act transgressing more than one prohibition may be

- 7 -

punished separately based on the violation of the separate prohibitions.

Under *Blockburger*'s reasoning, multiple punishments for violations of a single criminal prohibition are permissible if the prohibition is aimed at singular acts—as opposed to a continuous offense or course of criminal conduct—and the defendant's conduct involves separate acts stemming from "successive impulses." *See Blockburger*, 284 U.S. at 302 (quoting Wharton's Criminal Law (11th Ed.) § 34).[3] And multiple punishments for a single act that violates separate criminal prohibitions are permissible if the separate prohibitions each require proof of a fact not required to establish a violation of the other prohibition. *See id.* at 304.

In *Blockburger*, the defendant was convicted of three counts related to the illegal sale of morphine hydrochloride to the same purchaser. *Id.* at 301. One "count charged a sale on a specified day of ten grains of the drug not in or from the original stamped package," while another "count charged a sale on the following day

_____

3. *Blockburger* does not address when multiple punishments may be imposed for a singular act that violates a single prohibition but affects multiple victims.

of eight grains of the drug not in or from the original stamped package." *Id.* The final "count charged the latter sale also as having been made not in pursuance of a written order of the purchaser as required by the statute." *Id.* On review, the defendant first contended that the conduct on which the first two counts were predicated "constitute[d] a single offense" based on the facts. *Id.* Second, the defendant also argued that the final count— for violating the separate statutory prohibition concerning the absence of a written order—as a matter of law "constitute[d] but one offense" with the later of the other counts, since the two counts were based on the same conduct. *Id.* The Court rejected both arguments.

Concerning the first argument, the Court concluded that the two sales "were distinct and separate sales made at different times." *Id.* This was so even though payment for the drug in the second transaction—to be delivered the day after the drug in the first transaction was delivered—was made "shortly after delivery of the drug" in the first transaction. *Id.* The Court reasoned that "the first sale had been consummated, and the payment for the additional

drug, however closely following, was the initiation of a separate and distinct sale completed by its delivery." *Id.*

The Court pointed to the well-established distinction between offenses that are continuous in character and offenses that can be committed by a singular act—that is, "uno ictu" or with one blow—concluding that the statute under examination could be transgressed by an "isolated act." *Id.* at 302 (quoting *Ex parte Snow*, 120 U.S. 274, 281, 286 (1887)). "Each of several successive sales constitutes a distinct offense, however closely they may follow each other." *Id.* The Court elaborated by highlighting the significance of "successive impulses" discussed in Wharton's Criminal Law: "[W]hen the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie." *Id.* (quoting Wharton's Criminal Law (11th Ed.) § 34).

On the defendant's second contention, comparing the offense of sale "not in or from the original stamped package" with the offense of sale "not in pursuance of a written order," the Court observed that "[e]ach of the offenses created requires proof of a

- 10 -

different element." *Id.* at 304. The Court stated this as the governing rule: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Id.* Under that test, the defendant's argument was unavailing because "although both sections were violated by the one sale, two offenses were committed." *Id.*

We have recognized the importance of the two different lines of analysis in *Blockburger* and that conflating those distinct lines of analysis is erroneous. Rejecting case law that suggested such a conflated analysis, in *Graham v. State*, 207 So. 3d 135 (Fla. 2016), we clarified

> that *Blockburger* ultimately provides courts with two tests to apply: (1) where the defendant is convicted multiple times under the same statute for acts that occurred during the course of a single criminal episode, a "distinct acts" test is used, but (2) where a defendant is convicted under multiple statutes for one act, the "different elements" test applies.

*Id.* at 141. Regarding "the *Blockburger* 'distinct acts' analysis," we recognized that acts are distinct when they "indicate[] a different impulse to violate the statute." *Id.* at 139. We also accordingly

- 11 -

acknowledged "that under *Blockburger*, a defendant can also commit a number of sequential acts within a single criminal episode, and each distinct act may be punished under the same statute." *Id.* at 140.

B.

"With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). The protection against multiple punishments for the same offense thus

> is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are "multiple" is essentially one of legislative intent.

*Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (citations omitted). In line with our law deciding that the state and federal double jeopardy protections have the same scope, we have echoed and applied this understanding of the limitations on multiple punishments as focused on legislative authorization. *See, e.g., Valdes v. State*, 3 So.

- 12 -

3d 1067, 1069 (Fla. 2009) (discussing relevant Supreme Court case law and stating that "there is no constitutional prohibition against multiple punishments for different offenses arising out of the same criminal transaction as long as the Legislature intends to authorize separate punishments").

The decision in *Blockburger*—which notably makes no mention of the constitutional protection against double jeopardy—addresses how to properly interpret and apply federal criminal laws to insure that multiple punishments are not imposed when unauthorized by Congress. "In the federal courts the [*Blockburger*] test . . . ordinarily determines whether the crimes are indeed separate and whether cumulative punishments may be imposed." *Johnson*, 467 U.S. at 499 n.8. But "the *Blockburger* test does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Id.*

## III.

In Florida, the legislature has acted to provide very specific guidance concerning the general rules for determining when

- 13 -

separate punishments are properly applied for separate offenses that are committed during one criminal transaction or episode. The legislative rules were adopted against the backdrop of *Blockburger* and Florida's prior adherence to the "single transaction rule," under which, as we held in *Simmons v. State*, 10 So. 2d 436, 439 (Fla. 1942), "there should be one punishment where . . . the various counts of the information presented different aspects of the same criminal transaction and . . . the court should impose a sentence on the count which charges the higher grade or degree of the offense." From its inception in 1976, section 775.021(4) "abrogated the single transaction rule." *Borges v. State*, 415 So. 2d 1265, 1266 (Fla. 1982). The statutory rules thus embody a broad purpose "to convict and sentence for each criminal offense committed"—even when committed in the course of a single transaction or episode— and a departure from principles of lenity as previously understood.

These "rules of construction" are set forth in section 775.021(4):

> (4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing

judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

   (b)   The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:

   1.   Offenses which require identical elements of proof.

   2.   Offenses which are degrees of the same offense as provided by statute.

   3.   Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

§ 775.021(4), Fla. Stat.

The "principle of lenity" in subsection (1) requires that the provisions of the Florida Criminal Code "and offenses defined by other statutes shall be strictly construed," so that "when the language is susceptible of differing constructions, it shall be construed most favorably to the accused." § 775.021(1), Fla. Stat. But subsection (4) makes clear that this rule of lenity has no application to matters within the scope of subsection (4), subject only to the specific exceptions set forth in subsection (4)(b)1.-3.

We have acknowledged that "the *Blockburger* same-elements test"—which is sometimes characterized as a different elements

test—is "codified" in subsection (4). *State v. Marsh*, 308 So. 3d 59, 61 (Fla. 2020); *see also State v. Maxwell*, 682 So. 2d 83, 84 (Fla. 1996) ("Section 775.021(4) is a codification of the *Blockburger* test, sometimes referred to as the same-elements test, which inquires whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars subsequent punishment or prosecution."). The *Blockburger* same-elements test is reflected in the text of the last sentence of subsection (4)(a), which provides that "offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial." It is also reflected and refined in the exceptions of subsection (4)(b) from the general rule that the intent of the legislature is "to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction."

Under the statute—understood against the backdrop of *Blockburger*—multiple punishments for a criminal act that violates multiple criminal provisions are precluded if the provisions fall outside the ambit of the last sentence of subsection (4)(a) or within

the exceptions of subsection (4)(b). And nothing in the statute is inconsistent with *Blockburger*'s distinct acts test.

## IV.

Trappman's core argument is that the two offenses of which he was convicted were "committed during one continuous criminal episode with one criminal intent" and multiple punishments were precluded under the exception in section 775.021(4)(b)3. because the statutory elements of the lesser offense (battery of a law enforcement officer) were subsumed by the greater offense (aggravated battery of a law enforcement officer).[4] In support of his position, Trappman cites *Olivard*—the conflict case—and various other cases, relying principally on our decision in *Hayes v. State*, 803 So. 2d 695 (Fla. 2001), in which we said that in determining whether criminal conduct involves distinct acts rather than "one continuous criminal act with a single criminal intent," "courts

---

4. At oral argument, counsel for Trappman argued that this Court need not reach the issue of distinct acts and can instead resolve this case based on certain alleged deficiencies in the charging document. But Trappman never raised this charging-document issue below or in his initial brief to this Court. We do not now consider this issue that was not properly preserved or presented.

should look to whether there was a separation of time, place, or circumstances." *Id.* at 704.

The State counters that "[b]ecause Petitioner's convictions were based on two separate distinct acts which were based upon separate impulses or intents, a *Blockburger* [different elements] analysis is not triggered." The State also points us to *Graham,* where—as previously mentioned—this Court "clarifie[d]" its reading of *Blockburger* and distinguished between the "distinct acts" test and the "different elements" test and—following *Blockburger*— determined that acts are distinct when they are based on separate impulses. *Graham,* 207 So. 3d at 139, 141. According to the State, Trappman's conduct in shoving the officer and subsequently siccing the dog on the officer involved two distinct acts flowing from two separate impulses.

## V.

The State concedes that the two offenses for which Trappman was convicted occurred in the course of a single criminal transaction or episode. The material facts related to the commission of the two offenses similarly are not disputed. Nor is it disputed that the statutory elements of the lesser offense (battery of

a law enforcement officer) were subsumed by the greater offense (aggravated battery of a law enforcement officer) and that only one punishment would be applicable if the offenses were predicated on a singular act.

Accordingly, the sole question presented for us to decide is whether the relevant conduct of Trappman constituted one criminal act of battery of a law enforcement officer, subject to only one punishment, or two successive criminal acts of battery of a law enforcement officer (the latter of which was in an aggravated form), subject to two punishments. We review this question de novo. *See Pizzo v. State*, 945 So. 2d 1203, 1206 (Fla. 2006) ("A double jeopardy claim based upon undisputed facts presents a pure question of law and is reviewed de novo."). Concerning whether there were multiple acts of battery, there is no suggestion that battery is a continuing offense that cannot be committed by an isolated act. Nor is there any suggestion that the question here is resolved by the manner in which the statutory offenses are defined.[5]

---

5. This stands in contrast to cases such as *State v. Johnson*, 343 So. 3d 46, 47 (Fla. 2022), in which we upheld multiple punishments for a single act of leaving the scene of an accident involving multiple victims. Relying on the text of the statutory

Ultimately, we agree with the State that *Blockburger*'s distinct acts analysis provides the appropriate basis for deciding the issue in this case. That test serves to implement the statutory directive to "convict and sentence for each criminal offense committed."

A.

We begin our analysis by examining our decision in *Hayes*, in which the defendant, who was convicted and sentenced for both armed robbery and grand theft of an automobile for conduct in the course of a single criminal episode, challenged the district court decision upholding the dual punishments against a double jeopardy claim. 803 So. 2d at 697-98. Specifically, we considered

> the issue . . . whether a defendant may be separately convicted of both armed robbery and grand theft of a motor vehicle where the defendant steals various items from inside a victim's residence, including the victim's car keys, and then proceeds outside the residence to steal the victim's motor vehicle utilizing these keys.

---

prohibition as understood in the context of the statutory scheme, we concluded that the "permissible unit of prosecution" under the statute authorized "prosecution on a per-crash-victim basis, rather than on a per-crash basis." *Id.* The arguments presented here do not turn on a unit-of-prosecution analysis.

*Id.* at 697.  Based on the circumstances described, we decided that the two offenses were based on "distinct and independent criminal acts" and therefore that the imposition of two punishments was appropriate.  *Id.* at 704-05.

The foundation for our analysis in *Hayes* was our recognition that "the prohibition against double jeopardy does *not* prohibit multiple convictions and punishments [when] a defendant commits two or more distinct criminal acts," *id.* at 700—that is, when the offenses are not the same "in fact."  We also recognized that in deciding whether criminal conduct constitutes a single criminal act as opposed to multiple distinct acts, "it is difficult to formulate a bright-line rule because the determination is often fact-specific."  *Id.* at 705.

Nonetheless, after surveying Florida case law and case law from certain other jurisdictions, we articulated a standard for making such a determination "in a case involving a single victim's property."  *Id.* at 704.  We said that

> courts should look to whether there was a *separation of time, place, or circumstances* between the initial armed robbery and the subsequent grand theft, as those factors are objective criteria utilized to determine whether there are distinct and independent criminal acts or whether

there is one continuous criminal act with a single criminal intent.

*Id.* (emphasis added). We elaborated that in deciding whether multiple criminal acts occurred, "the courts should consider the location of the items taken, the lapse of time between takings, the number of owners of the items taken, and whether intervening events occurred between the takings." *Id.*

Based on this analytical framework, we held that even though "there was only a single victim . . . and there were no intervening acts, . . . the robbery of various items from inside the residence was sufficiently separate in time, place and circumstances from Hayes' theft of the motor vehicle parked outside the victim's residence to constitute distinct and independent criminal acts." *Id.* Our analysis did not consider whether the conduct of Hayes involved "successive impulses," the touchstone articulated in *Blockburger* for determining whether separate violations of a particular statutory provision have occurred.[6]

---

6. In our discussion of case law from other jurisdictions, we did mention authorities that employed the concept of "impulses" in determining whether multiple instances of a particular offense had

B.

In contrast to *Hayes,* our more recent decision in *Graham* relied directly on *Blockburger*'s "distinct acts" analysis. We find that *Graham*—in tracking *Blockburger*—provides a more helpful line of analysis for deciding the issue presented by Trappman.

The question in *Graham*, in which the First District had affirmed the defendant's convictions and sentences, was "whether double jeopardy prohibits dual convictions under the same statute [when] the acts upon which the charges are based occur within a single criminal episode." 207 So. 3d at 137. The dual convictions and sentences were for lewd and lascivious molestation based on the successive touchings of different parts of the victim's body. *Id.* at 136. The victim's testimony established that the defendant went to her as she slept and "touch[ed] [her] breasts under her shirt." *Id.* at 141. Then, when the "victim turned over" she felt the defendant

_____

occurred. *See Hayes*, 803 So. 2d at 702-03. But we incorporated nothing regarding the concept of "impulses" in our own analysis.

"touching her buttocks." *Id.*[7] We concluded that "these touches were each individual acts, committed sequentially" and that "[u]nder a 'distinct acts' analysis, it is clear that punishment was warranted for each individual touch." *Id.* We analogized the case to *Blockburger*:

> Similar to *Blockburger*—in which the Court held that "the payment for the additional drug, however closely following, was the initiation of a separate and distinct sale completed by its delivery"—in this case, a new act began each time one touch ended and another was initiated, no matter how closely each one followed the other.

*Id.* (quoting *Blockburger*, 284 U.S. at 301).

We thus approved the First District's decision to affirm the dual convictions and sentences. *Id.* But we disagreed with its reasoning—reasoning that we concluded confused the proper analysis concerning multiple punishments for the violation of a particular criminal prohibition. *Id.* We recognized that the First District's reasoning found its genesis in the reasoning of one of our

---

7. Although we did not focus on the circumstance, it appears that the victim's act of turning over could be seen as an act of resisting the illicit contact.

- 24 -

own decisions—*State v. Meshell*, 2 So. 3d 132 (Fla. 2009). *Graham*, 207 So. 3d at 136.

In *Meshell*, we considered whether "Meshell's convictions for lewd and lascivious battery . . . for vaginal penetration or union . . . and for oral sex . . . violated double jeopardy." 2 So. 3d at 133. We upheld the dual convictions and sentences, concluding that "[b]ecause the oral sex . . . is a criminal act distinctively different from the vaginal penetration or union . . . , there is not a double jeopardy violation." *Id.* at 136. We reasoned that "sexual acts of a separate character and type requiring different elements of proof . . . are distinct criminal acts that the Florida Legislature has decided warrant multiple punishments." *Id.* at 135. Notwithstanding the focus of our reasoning in *Meshell*, we did quote a district court decision stating that "the fact that the same victim is sexually battered in the same manner more than once in a criminal episode by the same defendant does not conclusively prohibit multiple punishments" and that "[s]patial and temporal aspects are equally . . . important as distinctions in *character and type* in determining whether multiple punishments are

appropriate." *Id.* (quoting *Saavedra v. State*, 576 So. 2d 953, 957 (Fla. 1st DCA 1991), *approved*, 622 So. 2d 952 (Fla. 1993)).

In *Graham*, we criticized the reasoning of *Meshell* as follows:

Meshell had violated the lewd or lascivious molestation statute twice: First, when he penetrated the victim's vagina, and second, when he penetrated the victim's mouth. Under the *Blockburger* "distinct acts" analysis, each act was distinct because each act indicated a different impulse to violate the statute. Therefore, multiple punishments under the same statute would not violate double jeopardy. However, this Court held that the two acts were "distinct" because they were "sexual acts of a separate character and type *requiring different elements of proof,* such as those proscribed in the sexual battery statute." *Meshell*, 2 So. 3d at 135 (emphasis added). By including the "different elements" language in its analysis of "distinct acts," it appears this Court may have conflated the two tests set forth in *Blockburger*.

*Graham*, 207 So. 3d at 139-40.

C.

We reiterate *Graham*'s emphasis on the importance of distinguishing between the two tests set forth in *Blockburger*. The analysis employed in determining whether offenses are the same "in fact" is very different from the analysis employed in determining whether offenses are the same "in law." Multiple punishments are precluded only when the charged offenses are *both* the same in fact and the same in law. So it is essential that the distinct acts test not

- 26 -

be conflated or confused with—or displaced by—the same-elements test. Acts are distinct when they result from "successive impulses" even when the character of the acts is the same. But we also recognize that in applying the distinct acts test, it is significant that the conduct of a defendant has violated a single prohibition in multiple ways. Although a variation in the manner in which the prohibition is violated is not necessary to establish the existence of distinct acts, such variation may signal that the defendant's wrongdoing involves "successive impulses" to violate the same prohibition and thus results in distinct acts warranting separate punishment for each act.

Likewise, we acknowledge that *Hayes*'s teaching that "courts should look to whether there was a separation of time, place, or circumstances" in the conduct of a defendant points to factors that may evidence that the defendant was guilty of conduct involving successive impulses to violate the same prohibition. *See Hayes*, 803 So. 2d at 704. But the touchstone of the analysis—as *Blockburger* held—must be whether there were such successive impulses. As in *Graham*, we adhere to *Blockburger*'s distinct acts test, which recognized that "[e]ach of several successive" violations

"constitutes a distinct offense, however closely they may follow each other" and placed the focus of the analysis squarely on whether there were "successive impulses." *Blockburger*, 284 U.S. at 302. Under the *Blockburger* test, separate instances of an offense— arising from successive impulses—may be committed at the same place, in the same manner, and in close temporal connection.

D.

Applying the *Blockburger* distinct acts test, we conclude that Trappman's conduct involved successive impulses to commit a battery and that his dual convictions and sentences were properly affirmed by the First District. After Trappman first battered the officer by shoving him and the officer shoved back, Trappman responded to the officer's resistance not by continuing the shoving match but by using the pit bull to escalate his violence against the officer. Trappman's conduct unquestionably "unite[d] in swelling a common stream of action." *Id.* (quoting Wharton's Criminal Law (11th Ed.) § 34). But that does not mean that the conduct involved only one criminal act. On the contrary, there was a disjuncture in Trappman's conduct when he moved from shoving to deploying the dog. Successive criminal impulses to batter the officer are evident

in the sequence of events. Those successive impulses resulted in distinct acts that are subject to separate punishments.[8]

In this respect, Trappman's course of conduct is akin to the defendant's course of conduct in *Graham*. In both cases, although there was a close temporal connection between the successive instances of forbidden physical contact, distinct criminal acts nonetheless resulted from successive impulses. *Cf. Brown v. State*, 430 So. 2d 446, 446-47 (Fla. 1983) (upholding convictions for two counts of robbery of a retail establishment in which the taking of property was from two different cash registers controlled by two different employees, and reasoning that "[w]hat is dispositive is whether there have been successive and distinct forceful takings with a separate and independent intent for each transaction").

Recently, the Supreme Court of Connecticut applied a similar distinct acts analysis in *State v. Cody M.*, 259 A.3d 576 (Conn.

---

8. We need not and do not hold that when an offense, such as battery, may be committed by a single blow, that each additional blow laid on results in an additional offense. The test is not whether there are successive blows but whether there are successive impulses. We do not suggest that multiple blows may not spring from a single impulse.

2020), when it considered "whether multiple convictions for violation of a standing criminal protective order, arising from a series of statements made during a court hearing by the defendant, Cody M., to the person protected by the order, violate the constitutional protection from double jeopardy." *Id.* at 580. The basic facts were as follows:

> When the hearing began, the defendant [who was under incarceration] tried to engage in "small talk" with the victim, but she ignored him and did not make eye contact. The victim testified that the defendant had "whispered to me that he still loved me and had asked me why I had a block on the phone and that I said I would never do this to him . . . . [W]hen I wasn't responding to him, his tone changed and he told me that 'you're going to have problems when I get home, bitch,' and . . . I looked at him, and he told me that he was going to fucking kill me."

*Id.* at 581 (omissions and second alteration in original).

After rejecting an argument that criminal violations of a protective order were in the nature of a continuing offense, *id.* at 584, the court considered "whether the defendant's statements in th[e] case constituted a single act or multiple acts," *id.* at 588. The court stated that "distinct repetitions of a prohibited act, however closely they may follow each other . . . may be punished as separate crimes without offending the double jeopardy clause." *Id.* (omission

- 30 -

in original) (quoting *State* v. *Miranda*, 794 A.2d 506, 524 (Conn. 2002)). The court concluded "that the defendant's statements constitute two distinct acts because the victim's resistance, effectuated by her silence, was an intervening event causing the defendant to escalate his behavior." *Id.* The court further reasoned that "[w]hat separates the defendant's statements into two criminal acts is the defendant's clear escalation, showing a '*fresh impulse*' to move from nonthreatening conversation to threatening conversation." *Id.* (emphasis added).

Although the contexts are somewhat different, we find the line of analysis in *Cody M.*—with its focus on successive impulses—to be consistent with our reasoning here.[9]

We thus approve the First District's conclusion that Trappman's conduct involved distinct acts. We disapprove the conflict case, *Olivard*, to the extent that it failed to apply *Blockburger*'s distinct acts test, with that test's focus on successive

---

9. Although we recognize—as does *Cody M.*—that an escalation of criminal conduct may provide evidence of successive impulses, we do not suggest that such an escalation is necessary to a finding of successive impulses.

impulses. We also disapprove the decision of the Fifth District Court of Appeal in *Rivera v. State*, 286 So. 3d 930 (Fla. 5th DCA 2019), for the same reason. In failing to consider the distinct acts test, the Fifth District erroneously applied a categorical rule that, under section 775.021(4), "multiple convictions and sentences" may not be imposed "for aggravated battery and battery committed against one victim within the same criminal transaction or episode." *Id.* at 932 (footnotes omitted).

## VI.

Based on the holding in *Blockburger*—as well as our holding in *Graham*—that multiple punishments may be imposed for distinct acts springing from successive impulses to violate a single criminal prohibition in the course of a single criminal episode, we approve the First District's decision to affirm Trappman's dual convictions and sentences. And we disapprove *Olivard* and *Rivera* as inconsistent with our reasoning here.

It is so ordered.

MUÑIZ, C.J., and LABARGA, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.
SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal Certified Direct Conflict of Decisions/Direct Conflict of Decisions

First District - Case No. 1D19-1883

(Santa Rosa County)

Jessica J. Yeary, Public Defender, Tallahassee, Florida, Michael L. MacNamara, General Counsel, Tallahassee, Florida, and Maria Ines Suber, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

for Petitioner

Ashley Moody, Attorney General, Tallahassee, Florida, and David Welch, Assistant Attorney General, Tallahassee, Florida,

for Respondent